Frank E. Scherkenbach (CA Bar No. 142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070 Fax: (617) 542-8906

Thomas L. Halkowski (admitted pro hac vice)
halkowski@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Post Office Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070 Fax: (302) 652-0607

Erin C. Jones (CA Bar No. 252947)
ejones@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070 Fax: (650) 839-5071

David M. Hoffman (admitted pro hac vice)
hoffman@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Tel: (512) 226-8154 Fax: (512) 320-8935

Attorneys for Plaintiff
CYPRESS SEMICONDUCTOR
CORPORATION

Mark Fowler (Bar No. 124235)
mark.fowler@dlapiper.com
Gerald T. Sekimura (Bar No. 096165)
gerald.sekimura@dlapiper.com
Andrew P. Valentine (Bar No. 162094)
andrew.valentine@dlapiper.com
Alan Limbach (Bar No. 173059)
alan.limbach@dlapiper.com
Timothy Lohse (Bar No. 177230)
timothy.lohse@dlapiper.com
Michael G. Schwartz (Bar No. 197010)
michael.schwartz@dlapiper.com
Brent Yamashita (Bar No. 206890)
brent.yamashita@dlapiper.com
Saori Kaji (Bar No. 260392)
saori.kaji@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
GSI TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GSI TECHNOLOGY, INC.<br><br>Defendant. | Case Nos. 3:13-cv-02013-JST<br>4:13-cv-03757-JST<br><br>**JOINT LETTER BRIEF RE DISCOVERY** |

**CERTIFICATION OF CONFERENCE**

On September 27, 2013 and September 30, 2013, among other dates leading up to this filing, counsel for Plaintiff Cypress Semiconductor Corporation ("Cypress") and Defendant GSI Technology, Inc. ("GSI") conferred regarding the subject matter of this letter brief, and jointly file this letter brief, pursuant to the Court's Standing Order For All Civil Cases Before District Judge Jon S. Tigar.

Dated: September 30, 2013

Respectfully submitted

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
David M. Hoffman

Attorneys for Plaintiff
CYPRESS SEMICONDUCTOR CORPORATION

DLA PIPER LLP

By: */s/ Michael G. Schwartz*
Michael G. Schwartz

Attorneys for Defendant
GSI TECHNOLOGY, INC.

September 30, 2013

District Judge Jon S. Tigar
San Francisco Courthouse, Courtroom 9 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Cypress Semiconductor Corporation v. GSI Technology, Inc.*
Case No. 3:13-cv-02013-JST

Dear Judge Tigar:

The parties in the above-captioned matter have been unable to reach an agreement on the proper scope of a Protective Order. Specifically, the parties disagree on (1) whether Cypress employees Terence Woodsome and Andrew Bateman qualify as "Designated House Counsel" under Sections 2.4 and 7.4 of Parties' Proposed Protective Order, enclosed; (2) whether Designated House Counsel should be allowed to see certain materials identified as "HIGHLY CONFIDENTIAL – SOURCE CODE"; (3) the inspection location for netlists and graphic database system (GDS) layout files; and (4) the proper page limits for printed source code.

## CYPRESS'S STATEMENT

Mr. Woodsome and Mr. Bateman clearly qualify as House Counsel under the ***agreed upon*** protective order provisions. Further, Cypress's compromise proposals for access to and inspection of source code, netlists, and GDS files are eminently reasonable and more stringent than this district's Model Protective Order whereas all of GSI's requests deviate from it.[1]

### I. Mr. Woodsome and Mr. Bateman Qualify as House Counsel

As set forth in the attached proposed Protective Order, the parties agree that Designated House Counsel should be given access to Highly Confidential Attorneys' Eyes Only information ("HCAEO") if (1) they have no involvement in competitive decision making; (2) disclosure is reasonably necessary for this litigation. *See* Ex. A §2.4. The parties' dispute is simply whether Mr. Woodsome and Mr. Bateman qualify, and they clearly do. In fact, in a related suit between the parties in this district, GSI has already conceded that Mr. Woodsome is not a competitive decision maker and has a reasonable need for disclosure. GSI's attempt to change its mind now is inconsistent with the Model Protective Order and the facts.

#### A. Mr. Woodsome and Mr. Bateman Are Not Competitive Decisionmakers

When determining whether in-house counsel should be permitted to access HCAEO of the opposing party, the court weighs a party's interest in safeguarding its confidential information

[1] United States District Court, Northern District of California, Model Stipulated Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, http://www.cand.uscourts.gov/filelibrary/408/ND%20Cal%20Patent%20Highly%20Sensitive%20Model%20Prot%20Ord%2011-7-11.pdf ("Model Protective Order").

against the opposing party's right to the counsel of its choice. *See Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir. 1992). The parties' proposed order, like the Model Protective Order, strikes this balance by excluding "competitive decisionmakers."

### 1. **GSI Already Agreed Mr. Woodsome is not a Competitive Decisionmaker**

Cypress and GSI are currently involved in parallel related litigation (Case No. 5:11-cv-03613-EJD, the "Antitrust Case") in this district. GSI ***already granted*** Mr. Woodsome full access to GSI's HCAEO in the Antitrust Case.[2] In that case, GSI alleges, incorrectly, that Cypress's business practices in the market for "high performance, fast synchronous Quad Data Rate ('Quad' or 'QDR') SRAMs and Double Data Rate ('DDR') SRAMs" were ***anticompetitive***.[3] That is, in a case involving the *same* parties, the *same* Protective Order language, the *same* technologies, the *same* products, and the *same* competitive landscape, where competition is *the primary issue*, GSI conceded that Mr. Woodsome is not a competitive decisionmaker. While GSI now seeks *after the fact* to distinguish the two cases, it strains credibility. GSI first asserts (without a supporting declaration) that its antitrust counsel acted without permission. Even if true, this would only show that Mr. Woodsome's acceptability was so undeniable to GSI's antitrust counsel that they ***did not think that it even warranted discussion with their client***. Notably, GSI (or at least its counsel) also approved the use of the patent and trade secret model protective order, which is directed to high technology cases, for the antitrust case rather than the standard litigation order. Lastly, GSI's stated concerns over third parties are overblown. Any third party can at least file a motion for protective order if it believes an exception to the Protective Order is warranted.

### 2. **Mr. Woodsome and Mr. Bateman are not Competitive Decisionmakers**

*U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) defined competitive decisionmaking as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Neither Mr. Woodsome nor his colleague Mr. Bateman's duties involve any such thing. As shown in their attached declarations, their duties include management and participation in litigation matters as integral members of the litigation team. Ex. B ¶¶7-9; Ex. C ¶¶6-13 Neither is involved in the product design, marketing, or pricing of any Cypress products, let alone those that compete with products at issue in this litigation. *Id* at ¶6 & ¶5.

GSI spends considerable time arguing about patent prosecution being a competitive activity, but this is irrelevant since both gentlemen would be under the Prosecution Bar for this case going forward. Ex. A §8; Ex. B ¶11, Ex. C ¶ 8-11. Moreover, Mr. Woodsome is not even licensed to practice before the Patent Office. Ex. B ¶ 11. While GSI seeks to make an issue out of Mr. Bateman's deposition, the deposition took only two hours and two minutes and was very general in nature.[4]

---

[2] Case No. 5:11-cv-03613-EJD, Stipulated Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets (December 4, 2012).
[3] Case No. 5:11-cv-03613-EJD, Compl. at 1.
[4] A copy of the transcript can be provided to the Court, if desired.

GSI further incorrectly argues that Mr. Bateman and Mr. Woodsome's role in in the acquisition of patents, especially the '861 patent, is not clear. It is. As noted in Ex. B, Mr. Woodsome does not participate in decision making related to the acquisition of patents by Cypress. ¶10. With regard to Mr. Bateman, while he is involved in patent acquisition activities, there is no difference between an outside and inside counsel in providing this type of advice. GSI rightfully has no complaint with outside counsel reviewing its HCAEO and then advising on an acquisition, because counsel are ethically bound by the Protective Order to not use the HCAEO information in giving advice. Ex. B ¶17 ; Ex. C ¶19. Certainly in-house counsel are as capable of respecting the protective order as outside counsel. *See U.S. Steel* at 1468 (stating that "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern" the analysis); *accord SoftwareWorks Group, Inc. v. IHosting, Inc.,* 2006 U.S. Dist. LEXIS 89846, *4 (N.D. Cal. Nov. 29, 2006).

Lastly, with regard to licensing, Cypress has no current program for licensing any of the Patents-in-Suit. Ex. C ¶13. As such, Mr. Bateman's licensing duties are solely directed at Cypress's USB and touchscreen patents. *Id.* Mr. Woodsome's rare tangential involvement in licensing is relegated exclusively to legal questions - never advice on licensing rates or scope. Ex. B ¶10.

**B. <u>Disclosure to Mr. Woodsome and Mr. Bateman is Reasonably Necessary</u>**

Mr. Woodsome and Mr. Bateman are both persons "to whom disclosure is reasonably necessary for this litigation." Cypress would be substantially impaired in litigating this matter if Mr. Woodsome and/or Mr. Bateman are denied access to HCAEO, as both are a necessary part of Cypress's legal team.[5]

First, as Cypress's current counsel at Fish & Richardson were unable to represent Cypress in the ITC case against GSI, only Mr. Woodsome and Mr. Bateman have detailed knowledge of that case history, the issues, and the parties that is essential to litigating this case. Ex. B ¶ 12; Ex. C ¶ 17. While GSI chose to use their previous firm, Cypress should not be required to retain undesired counsel. Ex. B ¶ 14. Next, while GSI asserts that Cypress was able to get by "just fine" in the ITC, this is simply wrong. *Id.* at ¶¶ 14-16 & Ex. C ¶ 18. In fact, Cypress believes that denying Mr. Woodsome and/or Mr. Bateman a role on the litigation team in the ITC was a significant factor in the flawed outcome. *Id.* Both Mr. Woodsome and Mr. Bateman are highly experienced attorneys with a wealth of experience in patent matters and are necessary for this case, yet they could not even review pleadings on issues that were not CBI because it was often intermingled with CBI. Ex. B ¶¶ 1-5; Ex. C ¶¶ 1-4. GSI's lack of in-house counsel is irrelevant. GSI is able to hire its preferred in-house counsel if it desired.

Moreover, as several Courts have noted, access to certain HCAEO "may be necessary for evaluating settlement." *Barnes and Noble v. LSI Corp*., 2012 WL 1564734, at *1 (N.D. Cal. 2012) (granting access to HCAEO financial data to enable in-house counsel to participate in settlement discussions). While in some cases, financial data alone may be sufficient, this is a complicated seven patent case. Every substantive position taken in this case by GSI will most

---

[5] Under the standard proposed by GSI, in-house counsel would essentially only be "necessary" if outside counsel were incompetent. This cannot be the model order's intent.

likely revolve around some assertion of non-infringement or invalidity. Without access to HCAEO, an in-house attorney cannot possibly understand the merits of the case, let alone meaningfully participate in a settlement discussion or make settlement decisions – ***decisions that cannot be made by outside counsel alone***. Granting access to Mr. Woodsome and Mr. Bateman is thus necessary to ensure the best chance of a resolution prior to trial – an outcome that is in the best interests of everyone.

## II. Designated House Counsel Should Be Permitted Limited Review of Source Code

The parties agree that the provisions of the Model Protective Order are presumptively reasonable, such that a party arguing for a departure from them must justify its request. *See MasterObjects Inc. v. Google Inc.*, 2012 WL 2958227 at *2 (N.D. Cal. July 19, 2012). Yet, as shown above, GSI seeks to nullify it. This trend continues in their request to erase the model orders provisions for House Counsel to view source code.[6] Notwithstanding the model order, in the interest of compromise, Cypress agreed that Designated House Counsel ***can only be disclosed*** source code "to the extent that it appears within the body or exhibits of a pleading, filing, transcript, or drafts as exchanged, at issue, or prepared as part of this action." While the Model Protective Order grants unfettered access to source code, Cypress is voluntarily willing to limit the access. Even though GSI rejected this compromise, Cypress still offers it.

## III. Netlists and GDS Files are not Source Code

The parties also cannot agree on provisions that will protect netlists and GDS files.[7] GSI argues that these files are or should be treated as source code. These files, however, are computer generated and clearly not source code. The mere fact that GSI feels compelled to redefine source code beyond what is set forth in the model order shows this to be true. GSI's position is also at odds with GSI's prior treatment of these document types. In the ITC case, which involved two overlapping patents and the same types of files, GSI received no additional protection for either netlists or GDS files beyond those of other CBI documents.[8] GSI's sudden decision that these files need inspection treatment is thus questionable. However, again in the interest of compromise, Cypress is willing to grant these files the extra layer of protection of an "inspect and print" regime. Cypress merely requests that these files be hosted on a secure computer at Cypress's outside counsel's offices, such that Cypress is not required to ask and arrange for a visit to opposing counsel's office each time it needs to view these files.

## IV. Page Limits

The parties also dispute the number of pages of source code that a receiving party should be allowed to print without seeking leave of court. GSI proposes 500, Cypress 1000. The case involves seven asserted patents and at least fifteen different GSI product families.[9] While

---

[6] *See* Model Protective Order at 7.4.
[7] Netlists and GDS files specify the layout and interconnections of a circuit. They represent the final output of the semiconductor design process.
[8] *Id.,* Order No. 1: Protective Order (July 28, 2011).
[9] 3842, 79, 81032, 81302, 81313, 8180, 8182, 821313, 82582, 82583, 8342, 8662, 866, 8672, and 8673 families.

Cypress would hope that GSI will agree to a representative product stipulation, if Cypress is required to print source code from each product relating to each patent, under GSI's proposal that would be only 5 pages of code per patent/product to cover all of the claims in that patent. This is a *very limited amount of printing*. Moreover, as Cypress expects that GSI has additional accused products whose numbers will become known during discovery, that per product number could yet decrease. Providing 1000 pages of source code as a starting point is quite reasonable.[10]

**GSI'S STATEMENT**

**A. The Protective Order**:

The parties agree on the overall framework for the protective order. The disputed issues are: (1) the terms of the HIGHLY CONFIDENTIAL – SOURCE CODE provision (the "Source Code Provision") (section 9); and (2) whether, under any circumstances, Designated House Counsel may have access to any form of HIGHLY CONFIDENTIAL – SOURCE CODE under either party's proposed Source Code Provision. *See* Ex. A §§ 2.4, 7.5(d), 9(a), (d), (f).

The parties agree what types of electronic information may be treated as source code (including netlists and GDS files), but dispute: (a) how certain types of source code should be produced (compare § 9(c) to § 9(f)); and (b) how much source code may be printed (§ 9(d)). *See* Proposed Protective Order § 9. GSI's proposal requires the producing party to make all forms of source code available for review at the offices of the producing party's counsel or at another mutually agreeable location. *See* § 9(c). GSI's proposed § 9(c) is taken directly from the Model Protective Order For Patent Cases ("MPO") and, thus, is presumptively reasonable.[11] *See Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 601806, *1 (N.D. Cal. Feb. 23, 2012) ("[T]he court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information."). Cypress's version, on the other hand, requires the producing party to deliver netlists and GDS files, but not other forms of source code, to the receiving party's counsel. *See* § 9(a), (c), (f). Cypress's proposal is flawed because the confidentiality and need for heightened protection for netlists and GDS files are as equally important as they are for any other form of source code. The native electronic netlists and GDS files, for example, are used by manufacturers to fabricate and test integrated circuits. Cypress's proposal eliminates the primary purpose of the MPO's (and GSI's) Source Code Provision, which is to provide heightened protection against disclosure or dissemination to prohibited recipients of this highly sensitive technical information.

The primary purpose of the Source Code Provision is further undermined by Cypress's proposal to allow the receiving party to print 1,000 pages of source code. Permitting a party to print a 1,000 pages also contradicts the requirement that source code be printed solely for preparation of various pleadings and exhibits and not for the purposes of reviewing the source code. *See* § 9(d). In this regard, while the MPO does not place a particular numerical limit on the number of pages of source code that may be printed, it permits only "limited portions" to be printed. Throughout

[10] Notably, if GDS files or netlists are held to be source code, Cypress will likely need to request additional pages as a single GDS file can be over 1000 pages.

[11] The last sentence of section 9(c) is not from the MPO, but was added by agreement of the parties.

the meet and confer process, GSI stated its preference to defer to the MPO's "limited portions" standard (which it still would accept). However, in an effort to compromise, and as reflected in GSI's proposed version, GSI offered to agree to allow the receiving party to print 500 pages of source code, but Cypress refuses to budge from 1,000 pages.

Cypress also seeks to allow Designated House Counsel to have access to source code "to the extent that it appears within the body or exhibits of a pleading, filing, transcript, or drafts as exchanged, at issue, or prepared as part of this action." *See* § 7.5(d); *see also* §§ 2.4, 7.5. The source code that Cypress has requested GSI to produce includes the most sensitive of GSI's design information. Allowing any employee of Cypress (a direct competitor) to have access to any form or portion of GSI's confidential source code creates the type of risk the Source Code Provision is intended to eliminate. There is simply no valid reason for any Cypress employee to see this secret information – regardless of whether it is cited in or attached to court papers.

### B. Cypress's Improperly Proposed Designated House Counsel

The parties agree that Designated House Counsel are those who seek access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" ("HCAEO") information "(1) who have no involvement in competitive decision-making" and "(2) to whom disclosure is reasonably necessary for this litigation." *See* Ex. A § 2.4. This is consistent with both Federal Circuit and Ninth Circuit authority. *See U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1467-68 (Fed. Cir. 1984); *In re Deutsche Bank Trust Co.,* 605 F.3d 1373, 1378-79 (Fed. Cir. 2010); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-72 (9th Cir. 1992); *Intel Corp. v. VIA Tech., Inc.*, 198 F.R.D. 525, 528-531 (N.D. Cal. 2000) (denying access to Intel's in-house counsel who requested access to all of VIA's attorneys' eyes only information where VIA was the only unlicensed competitor of Intel for chipsets and Intel was the "dominant player" in the market). "Competitive decisionmaking" is defined as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp.*, 730 F.2d at 1468. Competitive decision making is not limited to pricing and product design activities. *In re Deutsche Bank Trust Co.*,605 F.3d at 1378-79. For example, certain patent prosecution activities constitute competitive decision making. *Id.* at 1380 (stating prosecution bar may apply to attorneys if their involvement included "obtaining disclosure materials for new inventions and inventions under development, investigation prior art relating to those inventions, writing, review, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution").

Cypress has proposed that two of its in-house attorneys, Terrance Woodsome and Andrew Bateman, be deemed Designated House Counsel and be allowed access to ***all*** GSI and third party HCAEO, including source code information. Mr. Woodsome and Mr. Bateman should be precluded from accessing such confidential GSI information for two independent reasons: (1) they are competitive decision-makers of a direct competitor of GSI; and (2) it is not "reasonably necessary" for either to review such information.

During meet and confer, Cypress described Mr. Woodsome and Mr. Bateman's job responsibilities in a conclusory fashion, refusing to provide any meaningful detail about their

specific roles and frustrating meet and confer efforts. Cypress now attaches declarations from Messrs. Bateman and Woodsome to this letter brief. If the Court is inclined to give these declarations any weight, GSI requests the opportunity to depose Messrs. Bateman and Woodsome about their declarations, and such time should not count against GSI's deposition time limitations in this case. *Intel*, 198 F.R.D. at 527 (in-house counsel required to testify at an evidentiary hearing).

In any event, the declarations fail to establish that Mr. Bateman and Mr. Woodsome are not involved in competitive decision making. For example, although raised by GSI during meet and confer, neither Mr. Bateman nor Mr. Woodsome address what involvement, if any, they had with respect to Cypress's decision to acquire U.S. Patent No. 6,967,861 B2 (the "'861 patent") in June, 2012, from IBM to assert against GSI in this case. Moreover, Mr. Bateman admits that he is involved in the sale of Cypress patents, but does not address whether he is involved in Cypress's purchase of patents. Ex. C ¶ 12. Mr. Bateman also admits that he is involved in patent licensing and licensing strategy. Ex. C ¶ 13. Mr. Woodsome admits that he provides advice to management regarding litigation issues. Ex. B ¶ 9. And while he denies that he is a competitive decision maker, he does not deny that he participates in certain competitive decision making by Cypress. *U.S. Steel Corp.*, 730 F.2d at 1468.

Moreover, Cypress's representations about Mr. Bateman and his declaration are misleading. In the prior ITC investigation between Cypress and GSI, Cypress designated Mr. Bateman as a corporate representative deposition witness on a number of corporate deposition topics, including ownership of the asserted patents (two of which Cypress asserts in this case), prosecution of the asserted patents, invention documentation and disclosure procedures, current and planned licensing, and licenses for the asserted patents, not just patent prosecution.

Second, even if the Court were to find that Mr. Woodsome or Mr. Bateman are not involved in competitive decision making at Cypress (which they are), it is not "reasonably necessary" for Mr. Bateman and Mr. Woodsome to have access to any of GSI's HCAEO information (Ex. A § 2.4) for at least five reasons.

First, the primary reason Cypress states that it is purportedly necessary for Mr. Woodsome and Mr. Bateman to have access to HCAEO information is that they are responsible for managing this litigation. That rationale of purported need has been soundly rejected. *Brown Bag Software*, 960 F.2d at 1471; *Intel Corp.*, 198 F.R.D. at 528 ("In *Brown Bag*, a Party's contention that in-house counsel needed access to confidential information to manage the case was held to be insufficient to overcome the risk of inadvertent disclosure, even where outside counsel had withdrawn from the litigation."). Indeed, GSI does not have any in-house counsel and does not require in-house counsel to manage the litigation.

Second, Cypress previously filed the four-patent ITC investigation against GSI and its customers. Pursuant to the relevant ITC rules and protective order, all confidential information, including confidential discovery, deposition and trial transcripts, pleadings, motions, and briefs, as well as the confidential opinions of the Administrative Law Judge and the Commission, were served and filed on a strict outside counsel's eyes only basis (known as "CONFIDENTIAL BUSINESS INFORMATION" or "CBI"). Cypress managed the ITC investigation just fine without Mr. Woodsome or Mr. Bateman having any access to GSI confidential information. The

statements by Messrs. Bateman and Woodsome in their declarations that the outcome of the ITC investigation would have been different had they been provided access to CBI in that investigation are unsupported opinions. *See* Ex. B ¶ 15; Ex. C ¶ 18. Cypress lost because GSI does not infringe its patents, as both the ALJ and the Commission each found. Moreover, neither declaration explains what specific unique knowledge Mr. Bateman or Mr. Woodsome possesses that Morrison & Foerster, ***which Cypress selected*** to represent it in the ITC investigation, lacked. Furthermore, Messrs. Bateman and Woodsome had unlimited access to, and were free to provide unlimited input into, Cypress's domestic industry case (which generally requires proving that Cypress's own products practice its own asserted patents). Yet, the ITC concluded that Cypress failed to prove that it practices any of its own asserted patents in that investigation.

Third, Cypress has retained a highly-qualified law firm to represent its interests in this case and therefore does not require these two gentlemen to have access to GSI's confidential information. *Barnes & Noble, Inc.*, 2012 WL 601806, *5; *Intel*, 198 F.R.D. at 529. Neither declaration explains the specific unique knowledge or expertise Mr. Bateman or Mr. Woodsome possesses that Fish and Richardson, ***which Cypress selected*** to represent it in this case, lacks. Moreover, because neither Mr. Woodsome nor Mr. Bateman had access to any CBI in the ITC case, they may pass along all of the information they possess from that investigation to Cypress's attorneys in this case without access to HCAEO information in this case.

Fourth, Cypress asserts that it is somehow germane to this case that GSI's counsel did not object to Mr. Woodsome being provided access to HCAEO information in the antitrust case. However, GSI (the client) was unaware at the time that Mr. Woodsome was approved as designated house counsel in the antitrust case (in which case GSI is represented by a different law firm). GSI subsequently objected in the antitrust case to producing any of GSI's document production from the ITC investigation (e.g., GSI technical design and manufacturing information, etc.) unless Cypress agreed that the designated house counsel provisions would not apply to such production. *See* Ex. D. If Cypress pursues production of such technical design and development information in the antitrust case, GSI will object to Mr. Woodsome having access to it in that case.

Fifth, assuming, *arguendo*, Cypress could articulate a need for Mr. Woodsome or Mr. Bateman to have access to HCAEO information (which it cannot), Cypress cannot justify their access to all HCAEO information, much less GSI's confidential technical design, development and manufacturing information, source code and competitive customer information. *See, e.g., Barnes & Noble, Inc.*, 2012 WL 601806, *2, 6 (allowing in-house access to "relevant license agreements" "that likely will be necessary for those attorneys to participate in meaningful settlement negotiations," but denying access to a litany of other information, such as research and development, product designs, engineering or technical information, product specifications, pricing information, cost information, competitor information, financial information, etc.).

Finally, allowing Mr. Woodsome and Mr. Bateman access to HCAEO information will complicate the case. One third party agreed to allow its CBI from the ITC investigation to be used in this case only if such information is afforded outside counsel's eyes only protection. Ex. E. Other third parties have indicated telephonically that they will likely take the same position.

For the foregoing reasons, the Court should enter GSI's form of protective order and deny Mr. Woodsome and Mr. Bateman access to any GSI highly confidential information and source code.

Sincerely,

**FISH & RICHARDSON P.C.**

/s/ David M. Hoffman

Frank E. Scherkenbach (CA Bar No. 142549)
scherkenbach@fr.com
FISH & RICHARDSON P.C.
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070 Fax: (617) 542-8906

Thomas L. Halkowski (admitted pro hac vice)
halkowski@fr.com
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Post Office Box 1114
Wilmington, DE 19899-1114
Tel: (302) 652-5070 Fax: (302) 652-0607

Erin C. Jones (CA Bar No. 252947)
ejones@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel: (650) 839-5070 Fax: (650) 839-5071

David M. Hoffman (admitted pro hac vice)
hoffman@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Tel: (512) 226-8154 Fax: (512) 320-8935

Attorneys for Plaintiff
CYPRESS SEMICONDUCTOR CORPORATION

**DLA PIPER, LLP**

/s/ Michael G. Schwartz

Mark Fowler (Bar No. 124235)
mark.fowler@dlapiper.com
Gerald T. Sekimura (Bar No. 096165)
gerald.sekimura@dlapiper.com
Andrew P. Valentine (Bar No. 162094)
andrew.valentine@dlapiper.com
Alan Limbach (Bar No. 173059)
alan.limbach@dlapiper.com
Timothy Lohse (Bar No. 177230)
timothy.lohse@dlapiper.com
Michael G. Schwartz (Bar No. 197010)
michael.schwartz@dlapiper.com
Brent Yamashita (Bar No. 206890)
brent.yamashita@dlapiper.com
Saori Kaji (Bar No. 260392)
saori.kaji@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
GSI TECHNOLOGY, INC.

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the signatory listed above.

By: */s/ David M. Hoffman*
David M. Hoffman