UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYPRESS SEMICONDUCTOR CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>GSI TECHNOLOGY, INC.,<br><br>    Defendant. | Case No. 13-cv-02013-JST<br><br>**ORDER GRANTING GSI'S MOTION FOR LEAVE TO AMEND ITS MINNESOTA AND CALIFORNIA ANSWERS**<br><br>ECF No. 56 |

## I. INTRODUCTION

Plaintiff Cypress Semiconductor Corporation ("Cypress") has brought two now-consolidated patent infringement actions against Defendant GSI Technology, Inc. ("GSI"). California Complaint ("Cal. Compl."), No. 3:13-cv-02013-JST, ECF No. 1; Minnesota Complaint ("Minn. Compl."), No. 3:13-cv-03757-JST, ECF No. 1. GSI now moves to amend both Answers to assert the affirmative defenses of laches, intervening rights, and inequitable conduct. Motion for Leave to File First Amended Answers and Affirmative Defenses ("Mot.") at 4-5, ECF No. 56. Cypress does not oppose the motion insofar as Cypress seeks to assert the affirmative defenses of laches and intervening rights, but it does oppose GSI adding the defense of inequitable conduct. Opposition ("Opp'n.") at 1, ECF No. 58.

## II. BACKGROUND

### A. Procedural History

Cypress and GSI are direct competitors in the memory and technology chips market known as "SRAM" (Static Random Access Memory); they compete for "the same customers and design wins." Cal. Compl. ¶ 9. On May 1, 2013, Cypress filed a complaint against GSI for patent infringement of U.S. Patent Numbers 6,069,839; 6,292,403, 6,385,128, 6,445,645 and 6,967,861 in this district. Cal. Compl. These claims were consolidated with another complaint previously

filed by Cypress on March 30, 2011 in the United States District Court for the District of Minnesota, alleging patent infringement by GSI of U.S. Patent Numbers 5,903,174, 6,534,805, 6,651,134, 7,142,477 and 7,158,429. Minn. Compl. GSI filed answers to these complaints on May 22, 2013 and April 28, 2011, respectively, denying infringement and asserting various affirmative defenses. California Answer ("Cal. Ans."), ECF No. 11; Mot. at 2.

GSI has filed this motion for leave to amend its answers to add affirmative defenses "based [in part] upon Cypress' failure to provide material prior art references to the United States Patent and Trademark Office ("USPTO") during the prosecution of the '477 patent." Mot. at 4. GSI specifically seeks to add the affirmative defenses of inequitable conduct (Sixth Affirmative Defense) and intervening rights (Seventh Affirmative Defense) with respect to United States Patent No. 7,142,477 ("'477"); and laches (Eighth Affirmative Defense) with respect to Patent No. 6,651,134 ("'134"), as well as to amend its California Answer to add an Eighth Affirmative Defense of laches with respect to the '839, '403, '128 and '645 patents. Mot.

### B. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that "the court should freely give leave [to amend pleadings] when justice so requires." "The purpose of pleading is 'to facilitate a proper decision on the merits,' and not to erect formal and burdensome impediments in the litigation process." Barnes v. AT & T Pension Ben. Plan, No. 08-cv-04058 MHP, 2010 WL 1340543, at *3 (N.D. Cal. Apr. 5, 2010) citing Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973). "Unless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." Mora v. U.S. Bank N.A., No. 11-6598 SC, 2012 WL 879248, at *4 (N.D. Cal. Mar. 15, 2012) citing Howey at 1190. However, "[a] district court does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991) (citation omitted).

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the

2

individual did so with a specific intent to deceive the PTO." Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1327, n.3 (Fed.Cir.2009) (citations omitted). In addition, an inequitable conduct claim must establish "but-for materiality." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011).

### C. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a), since it arises under a federal statute relating to patents. 35 U.S.C. § 271(a).

## III. ANALYSIS

Cypress argues that leave to amend should be denied for two reasons: (1) GSI cannot meet the "but-for materiality" requirement of inequitable conduct because the Patent Examiner reissued the '477 patent despite considering the previously withheld references, and (2) GSI fails to plead sufficient facts to meet the scienter requirement for inequitable conduct. The Court addresses each argument in turn.

### A. Futility Because of Lack of But-For Materiality

"'The party opposing amendment bears the burden of showing prejudice,' futility, or one of the other permissible reasons for denying a motion to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987). "A proposed amendment is futile if 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" Collaboration Properties, Inc. v. Tandberg ASA, No. 05-cv-01940 MHP, 2007 WL 205065, at *2 (N.D. Cal. Jan. 25, 2007) citing Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

GSI claims that it recently learned of the allegedly withheld prior art during an International Trade Commission ("ITC") investigation. Mot. at 4. GSI alleges that, during the prosecution of the '477 Patent, Cypress failed to disclose:

> (1) the Galvantech datasheets evidencing the Galvantech prior art product that inventors [Thinh Tran, Joseph Tzou and Suresh Parameswaran] developed at Galventech; (2) the deposition transcripts of the named inventors and the prosecution counsel of the '477 patent; and (3) the named inventors' presentation to Cypress's Patent Review Committee (i.e., an invention disclosure form) before

3

the filing of the '477 patent, which shows that Figure 2, and thus claim 1, of the '477 patent were in fact prior art ("Old Scheme").

Mot. at 13. If GSI can validly assert this affirmative defense, claim 1 of the '477 patent would be invalid, making the entire '477 patent unenforceable. Therasense, 649 F.3d at 1288 (citation omitted) ("inequitable conduct regarding any single claim renders the entire patent unenforceable").

To establish inequitable conduct, a claimant must meet the "but-for materiality" requirement. Therasense, 649 F.3d at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id. Cypress argues that during reexamination of the '477 patent, the Patent Examiner took into consideration newly disclosed information regarding the previously omitted prior art (namely, the deposition transcript of GSI's own expert, Robert Murphy, who had previously testified as to the invalidity of claim 1 of the '477 patent), and that the Examiner nevertheless reissued the patent. Opp'n. at 3. Therefore, Cypress alleges that GSI cannot meet the but-for causation requirement for an inequitable conduct claim, and leave to amend should be denied on the basis of futility. Id.

GSI makes two arguments in reply. First, it argues that its inequitable conduct defense relates to the issuance of the original claim 1 of the '477 patent, not the issuance of the later-amended claim 1 after reexamination. Reply at 2-3, ECF No. 59. Since "[u]nlike other deficiencies, inequitable conduct cannot be cured by reissue or reexamination," GSI argues that the reissuance of amended claim 1 does not cure the alleged inequitable conduct in the original claim 1 prosecution. Mot. at 13 citing Therasense, 649 F.3d at 1288. Secondarily, GSI also argues that, even if the process of issuing the amended claim were relevant to its defense, the disclosures that occurred during that process were insufficient to sufficiently disclose the prior art to the USPTO.

### 1. Relevance of the Reexamination Process

In the reexamination process, Cypress gave the Examiner the sworn testimony of GSI's expert witness, Robert Murphy, and the testimony of Cypress' rebuttal witness, Joseph McAlexander. Opp'n. at 3-4. The Examiner attested to having considered this testimony on April

19, 2012.  Id. at 3.  Cypress notes that the first page of Murphy's testimony states that it is related to the validity of the '477 patent.  Id. at 4.  Since the USPTO reissued claim 1 after receiving this testimony, Cypress argues that even if the Examiner had known of this prior art reference during the original claim 1 prosecution, the USPTO would still have issued Cypress the '477 patent.  GSI argues that this entire argument is a straw man because GSI's inequitable conduct defense relates to Cypress's inequitable conduct during the *original* prosecution.

Cypress has not demonstrated that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient . . . defense" of inequitable conduct.  Miller, 845 F.2d at 214.  Cypress does not rebut GSI's argument by contending that it made any prior disclosure of the prior art references during the original prosecution in 2006.  Its entire argument hinges on the assumption that the Examiner did not find the prior art relevant to the reexamination process.  But the reexamination process would only be relevant insofar as it examined the same claims and limitations that were presented in the original prosecution.  That is not what occurred here.  In fact, during the reexamination, the USPTO was considering the validity of claim 1 with an additional limitation than was presented during the original patent prosecution.

Cypress attempted to amend claim 1 and add new claims to the Patent, but the Examiner rejected the amendments to claim 1 as broadening the scope of the claim in violation of 37 C.F.R. § 1.530(j).  Reply at 6-7; and Reply Ex. P at 3-4 (CYP201300003516-17).  Cypress then resubmitted an amended version claim 1 on March 9, 2012 that added a new limitation.  Reply at 7.  Since the scope of claim 1 was narrowed during reexamination, the Examiner was reexamining the narrower scope of the newly amended claim 1, and not the broader scope of the original claim 1.  It is possible that under the original claim 1, the Examiner would not have issued the original broader patent had they been aware of the prior art references made known during the reexamination.  See Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1332 (Fed. Cir. 1998) ("...amendment of a claim 'tainted' by inequitable conduct will not excuse the patentee's intentional failure to disclose material references"); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F.3d 1226, 1236-37 (Fed. Cir. 2003) ("Nor is a reference immaterial simply

because the claims are eventually deemed by an examiner to be patentable thereover"). Therefore, Cypress has failed to show that GSI cannot possibly meet the but-for materiality requirement.

Cypress also argues that pursuant to the Manual of Patent Examining Procedure ("MPEP") § 2014, if the Examiner had discovered inequitable conduct, he or she would have had a duty to write up an Office Action, which did not occur here. Opp'n. at 4-5. But GSI points out that, pursuant to MPEP § 2014, it is not part of the Examiner's responsibilities during reexamination to investigate potential inequitable conduct. Reply at 3. In any case, while the lack of an Office Action could be probative of GSI's defense, it does not establish that GSI cannot possibly succeed. See Volterra Semiconductor Corp. v. Primarion, Inc., 796 F. Supp. 2d 1025, 1042 (N.D. Cal. 2011) (Observing that "preliminary decisions and actions by the PTO in the course of a reexamination proceeding are not probative of invalidity"). At the pleading stage, it does not bar the defense.

### 2. Sufficiency of the Disclosure in the Reexamination Process

GSI further argues that while Cypress provided relevant testimony during the reexamination process, it did not disclose precisely where in the 1,000 pages of documents the relevant references were located. Reply at 4-5; see Rohm & Haas Co. v. Crystal Chemical Co., 722 F.2d 1556, 1572-73 (Fed. Cir. 1983) (subsequent disclosure of prior art omitted during the original prosecution was insufficient to overcome prior misconduct where "the record is devoid of any documentation showing that the PTO was told that any misrepresentations had been made or precisely where they had been made"). The documents were only produced on April 16, 2012, after the notice to reissue the patent had been signed by the Examiner on April 12, 2012. Reply at 7. Furthermore, GSI argues that the disclosure of this expert's testimony was not equivalent to disclosure of:

> (1) the Galvantech datasheets evidencing the Galvantech prior art product that the named inventors developed at Galvantech; (2) the deposition transcripts of the named inventors and the prosecution counsel of the '477 patent; and (3) the named inventors' presentation to Cypress's Patent Review Committee (i.e., an invention disclosure form) before the filing of the '477 patent, which shows that Figure 2, and thus claim 1, of the '477 patent were in fact prior art (i.e. "Old Scheme").

Mot. at 13. Further, the Examiner was considering different prior art references and issues during

1  the reexamination, not Galvantech.  Reply at 6.  Therefore, GSI argues that it has validly pled its

2  inequitable conduct defense as to the reexamination as well as to the original patent prosecution.

3  Mot. 13-14.

4         Cypress argues that the disclosure of the expert testimony covers all the relevant prior art

5  references that GSI says were not disclosed.  Opp'n. at 5.  Cypress argues that the documents that

6  GSI wanted Cypress to disclose were only relevant because they used the Figure 2 and Figure 3

7  designs, and since these figures are mentioned in the testimony provided to the Examiner, any

8  further disclosure would have been cumulative.  Opp'n. at 6-7.  "[E]ven where an applicant fails to

9  disclose an otherwise material prior art reference, that failure will not support a finding of

10 inequitable conduct if the reference is 'simply cumulative to other references,' *i.e.* if the reference

11 teaches no more than what a reasonable examiner would consider to be taught by the prior art

12 already before the PTO."  Regents of the Univ. of California v. Eli Lilly & Co., 119 F.3d 1559,

13 1574-75 (Fed. Cir. 1997) (quoting Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d

14 1565, 1582 (Fed. Cir. 1991)).

15        GSI acknowledges this but argues that the three references were not cumulative.  Reply at

16 7 citing Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd., 204 F.3d 1368, 1374

17 (Fed. Cir. 2000) (affirming the district court's finding of inequitable conduct and that the

18 untranslated portions of the submitted prior art reference were not cumulative because "the

19 untranslated portions of Canon contained a more complete combination of the elements claimed in

20 the [] patent than anything else before the PTO").  Cypress acknowledges that it did not submit

21 these three references, and it was in these references that the Old Scheme figure was contained.

22 Therefore, it appears that the Examiner never actually had the Old Scheme figure before her to

23 know that it was prior art.

24        The question of whether prior art that was not disclosed is cumulative is a factual issue that

25 should not be resolved at the pleading stage.  "[T]he scope and content of prior art and what the

26 prior art teaches are questions of fact."  Digital Control, Inc. v. Charles Mach. Works, 437 F.3d

27 1309, 1319 (Fed. Cir. 2006) (citations omitted) (concluding that "[b]ecause there are genuine

28 issues of material fact as to what the Geller reference teaches, and thus whether the Rorden patent

United States District Court
Northern District of California

is cumulative of the Geller patent, the issue of whether the failure to disclose the Rorden patent was a material omission was not properly decided at summary judgment"). Cypress cites Pixion v. Citrix Systems, No. 09-cv-3496-SI, 2012 WL 1309170, at *4 (N.D. Cal. April 16, 2012), in which another court of this district rejected a similar motion to amend to include the affirmative defense of inequitable conduct for non-disclosure of a prior art reference. In that case, the court found that the prior art was not disclosed during the prosecution of the parent patent, but disclosure would have been cumulative because the same prior art had previously been disclosed during the prosecution of the derivative child patents. Id. at *4. The Pixion court reached a decision on the issue of cumulativeness at the pleading stage, but did so because it found no genuine issue of material fact as to whether the prior art was cumulative, and thus "[the Defendant] d[id] not and c[ould] not show that the USPTO would have rejected the . . . Patents had [the reference] been disclosed." Id. However, in this case, there is a genuine dispute as to whether the three references GSI states were not disclosed are cumulative to the testimony that was disclosed during the reexamination process. This dispute cannot be resolved at the pleading stage.

### B.     Scienter

"[A]lthough 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Exergen, 575 F.3d at 1328-29. "A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may *reasonably infer* that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." Delano Farms Co. v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed.Cir. 2011) (citations omitted) (emphasis added).

Cypress argues GSI has failed to plead the requisite scienter with the specificity required by the Exergen standard.

### 1. Knowledge of the Withheld Information

GSI argues in their proposed amended answer that "the named inventors of the '477 patent were aware of the Galvantech prior art because it was a product that the named inventors had developed." Exh. B to Mot. at 7-8. GSI also alleges that the named inventors sent documents to the prosecution attorney (Kevin Daffer) identifying the Galvantech prior art as an "Old Scheme," including the invention disclosure form that expressly identifies the "Old Scheme." Id. at 9. Cypress does not deny that this prong of the scienter requirement was met. These facts are sufficient for the Court to infer that the named inventors and the prosecution attorney knew of the Galvantech prior art and knew it was material. The knowledge requirement is met.

### 2. Specific Intent to Deceive the PTO

Cypress argues that the intent to deceive cannot be inferred simply from the fact that the prior art was not disclosed, and the lack of a "good faith explanation." Opp'n. at 8 citing 1st Media, LLC v. Electronic Arts, Inc., 694 F.3d 1367, 1372-73 (Fed. Cir. 2012) (holding that a "court can no longer infer intent to deceive from non-disclosure of a reference *solely* because that reference was known and material" and that "a patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive") (emphasis added); and Therasense, 649 F.3d at 1290 ("[p]roving that the applicant knew of a reference, *should have known* of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive") (emphasis added). Cypress argues that GSI insufficiently pleads intent because it merely draws inferences from facts and does not actually allege direct evidence of intent to deceive.

GSI argues that it has pled enough to imply intent to deceive because not only because facts show that references were withheld, that counsel and the inventors had knowledge of this, and that there was a failure to disclose, but that in addition both counsel and inventors made *affirmative misrepresentations*. Reply at 1. GSI states in its proposed amended answer:

> Notwithstanding the fact that everyone understood that the "Old Scheme" was prior art, Mr. Daffer included several material misrepresentations in the '477 patent specification. Specifically, the specification affirmatively misrepresented that the "Old Scheme," shown in Figures 2 and 3 of the '477 patent, was an embodiment of the claimed invention rather than known prior art.

9

Mot. Ex. B at 9. Also, "[t]he named inventors reviewed these material misrepresentations in the draft specification of the patent, approved of them and falsely swore under oath in their inventor declarations that they had fulfilled their duty of disclosure." Reply at 10.

Second, GSI argues that Daffer made further misrepresentations to the USPTO:

> During the prosecution of the application that issued as the '477 patent, the Examiner issued a non-final office action on April 14, 2006. In the non-final office action, the Examiner rejected claim 1 (that reads on Figures 2 and 3) as being anticipated by U.S. Patent Publication No. 2002/0023200 to Ryan et al (the "Ryan Reference"). Mr. Daffer filed a response to the non-final office action on July 14, 2006. In the response, Mr. Daffer specifically argued that claim 1 recited claim elements that appear in Figures 2 and 3 (e.g., first and second paths coupled to an output of a latch and a multiplexer coupled to send the read address (for the first path) into the array before sending the write address (from the second path)) that were not present in the Ryan Reference. In arguing that claim 1 had elements not disclosed by the Ryan Reference, Mr. Daffer misrepresented to the Examiner and the PTO that the elements of claim 1 shown in Figures 2 and 3 were novel when in fact the elements in Figures 2 and 3 were prior art.

Mot. Ex. B at 11. Based on this evidence, GSI argues that "the intent to deceive is the single most reasonable inference that can be drawn from the facts pled in GSI's inequitable conduct affirmative defense." Reply at 11 (citing OhioWillow Wood Co. v. Alps South, LLC, 735 F.3d 1333, 1351 (Fed. Cir. 2013)) ("[T]he specific intent to commit inequitable conduct may be inferred from indirect and circumstantial evidence" so long as it is "'the single most reasonable inference drawn from the evidence'").

Therasense "tighten[ed] the standards for finding both intent and materiality in order to redirect [the inequitable conduct] doctrine that ha[d] been overused to the detriment of the public." Therasense, 649 F.3d at 1290. Previously, it was sufficient to prove that an applicant "should have known" of a reference's materiality, but after Therasense a defendant must prove that the individual associated with the application *did* in fact know of the reference's materiality. Id. In addition, "the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances . . . Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." Id. at 1290-91 (citations omitted).

However, Therasense discusses the standard for *proving* an inequitable conduct claim. At the pleading stage, GSI need only plead "sufficient allegations of underlying facts from which a

court may reasonably infer" that specific individuals had the intent to deceive. Exergen, 575 F.3d at 1328–1329. GSI need only prove that it was reasonable to infer that the specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence." Therasense 649 F.3d at 1290.

GSI has provided facts showing that the inventors reviewed documents that misrepresented Figures 2 and 3 and nonetheless signed declarations attesting that all disclosures had been made. In addition, GSI has provided facts showing that the prosecution attorney made misrepresentations with regard to the Ryan Reference. Based on this evidence, this Court concludes that GSI has alleged sufficient facts in its pleading from which the Court can reasonably infer that intent to deceive is the single most reasonable inference to be drawn from the evidence. Cypress has yet to argue that other reasonable inferences can be made from these facts that would outweigh this inference. In fact, GSI alleges that Cypress' attorney "currently claims he cannot remember why he drafted the '477 patent to cover the 'Old Scheme' of the prior art . . .." Mot. Ex. B at 9. GSI has met its burden, and scienter is sufficiently pled.

### C. Pleading the Circumstances of Inequitable Conduct

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1328.

Cypress has not argued that the inequitable conduct is insufficiently pled for any of these reasons, and therefore the Court presumes that Cypress considers itself sufficiently on notice of the nature of GSI's inequitable conduct claim. Under the "heightened pleading requirements of Rule 9(b) . . . [w]hat is determinative . . . is that [the patentee is] given fair notice of the basis for [the accused infringer's] inequitable conduct defense." TouchTunes Music Corp. v. Rowe Int'l Corp., 847 F. Supp. 2d 606, 622 (S.D.N.Y. 2012). "Several federal courts have properly held that a party who fails to object to the manner in which fraud or mistake is pleaded waives the specificity requirement set out in Rule 9(b)." Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1300 (3d ed.).

However, the Court notes that the Proposed Amended Answer does not specifically

"identify which *limitations* in . . . [the] claims the withheld references are relevant to, and where in those references the material information is found," nor the "particular claim *limitations*, or combination of claim *limitations*, that are supposedly absent from the information of record," as required by Exergen, 575 F.3d at 1329 (emphases added). Moreover, while the Proposed Amended Answers "name . . . specific individual[s] associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it," Id., to the extent the defense encompasses other, unnamed individuals such as "the Cypress Patent Review Committee," it is insufficiently pled against those individuals. Before filing its Amended Answer, GSI is advised to correct these deficiencies, if it can.

### D. Other Amendments

Cypress does not oppose GSI amending its answer to add the affirmative defenses of intervening rights (Seventh Affirmative Defense) with respect to Patent No. '477, and laches (Eighth Affirmative Defense) with respect to Patent No. '134, nor its proposal to amend its California Answer to add an Eighth Affirmative Defense of laches with respect to the '839, '403, '128 and '645 patents. Opp'n. at 1, n.1. In light of the liberal pleading requirements of Rule 15, the Court finds those amendments permissible as well.

## IV. CONCLUSION

For the foregoing reasons, GSI's motion is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: March 9, 2014

_____
JON S. TIGAR
United States District Judge

12