| | |
|---|---|
| Frank E. Scherkenbach (CA Bar No. 142549)<br>scherkenbach@fr.com<br>FISH & RICHARDSON P.C.<br>Fish & Richardson P.C.<br>One Marina Park Drive<br>Boston, MA 02210<br>Tel: (617) 542-5070    Fax: (617) 542-8906 | David M. Hoffman (admitted *pro hac vice*)<br>hoffman@fr.com<br>FISH & RICHARDSON P.C.<br>One Congress Plaza, Suite 810<br>Austin, TX 78701<br>Tel: (512) 226-8154    Fax: (512) 320-8935 |
| Thomas L. Halkowski (admitted *pro hac vice*)<br>halkowski@fr.com<br>FISH & RICHARDSON P.C.<br>222 Delaware Avenue, 17th Floor<br>Post Office Box 1114<br>Wilmington, DE 19899-1114<br>Tel: (302) 652-5070    Fax: (302) 652-0607 | Erin C. Jones (CA Bar No. 252947)<br>ejones@fr.com<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Tel: (650) 839-5070    Fax: (650) 839-5071 |

Attorneys for Plaintiff
CYPRESS SEMICONDUCTOR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS SEMICONDUCTOR CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>GSI TECHNOLOGY, INC.<br><br>    Defendant. | Case Nos. 3:13-cv-02013-JST<br>           3:13-cv-03757-JST<br><br>**PLAINTIFF CYPRESS SEMICONDUCTOR CORPORATION'S RESPONSE TO DEFENDANT GSI TECHNOLOGY INC.'S RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW**<br><br>DATE: October 2, 2014<br>TIME: 2:00 P.M.<br>PLACE: Courtroom 9, 19th Floor<br>JUDGE: Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARDS ................................................................................................... 2

III. ARGUMENT .................................................................................................................. 3

    A. The Stage and History of Litigation Weigh Against Issuing The Requested Stay ............... 3

    B. The Requested Stay Would Not Simplify the Issues and Trial of the Case ......................... 5

        1. The Evidence Shows that the '403/'839 Patents are Likely to be Confirmed ..................... 5

        2. Stay Pending Likely Affirmance Would Create Significant Inefficiencies ........................ 8

    C. A Stay Would Unduly Prejudice Cypress ............................................................................ 10

        1. Cypress's and GSI's Direct Competition Strongly Weighs Against Issuing a Stay ........... 10

        2. GSI Waited Over Six Months to File Its IPRs ................................................................. 13

        3. GSI Timely Moved for a Stay After Filing ....................................................................... 14

        4. The PTAB Instituted the IPRs .......................................................................................... 14

IV. CONCLUSION ............................................................................................................. 14

i      CYPRESS'S RESPONSE TO GSI'S RENEWED
MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case Nos. 3:13-cv-02013-JST & 3:13-cv-03757-JST

# TABLE OF AUTHORITIES

**Cases**

*Asetek Holding, Inc. et al. v. Cooler Master Co., Ltd., et al.*,
   No. 13-cv-00457, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) .................................. 2, 3, 9, 13

*Avago Techs. Fiber IP (Singapore) PTE LTD. v. IPtronics, Inc.*,
   No. 10-cv-02863, 2011 WL 3267768 (N.D. Cal. Jul. 28, 2011) .................................. 11

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999) .................................. 6

*Mytee Products, Inc. v. Harris Research, Inc.*,
   439 Fed. Appx. 882 (Fed. Cir. 2011) .................................. 13

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
   No. 06-cv-02252, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) .................................. 12

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
   No. 07-cv-06053, 2010 WL 545855 (N.D. Cal. Feb. 11, 2010) .................................. 12

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
   No. 08-cv-00930, 2008 WL 3833576 (N.D. Cal. Aug. 15, 2008) .................................. 12

*Sonics, Inc. v. Arteris, Inc.*,
   No. 11-cv-05311, 2013 WL 503091 (N.D. Cal. Feb. 8 2013) .................................. 11

*Tokuyama Corp. v. Vision Dynamics, LLC*,
   No. 08-cv-02781, 2008 WL 4452118 (N.D. Cal. Oct. 3, 2008) .................................. 2

*TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*,
   No. 13-cv-02218, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) .................................. 2, 3

*Tric Tools, Inc. v. TT Techs., Inc.*,
   No 12-cv-03490, 2012 WL 5289409 (N.D. Cal. Oct. 25, 2012) *on reconsideration*, 2012 WL
   6087483 (N.D. Cal. Dec. 6, 2012) .................................. 11

*Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc. et al.*,
   No. 12-cv-05501, 2014 WL 121640 (N.D. Cal. Jan. 13, 2014) .................................. 10

*VirtualAgility Inv. v. Salesforce.com*,
   --F.3d --, 2014 WL 3360806 (Fed. Cir. Jul. 10, 2014) .................................. 3, 4

*Vizio, Inc. v. Int'l Trade Comm'n*,
   605 F.3d 1330 (Fed. Cir. 2010) .................................. 6

**Statutes**

35 U.S.C. §311(b) .................................. 3

AIA § 18(b) .................................. 3

## I. INTRODUCTION

GSI is a direct competitor to Cypress. More than that, GSI's business model for the Accused Products is focused heavily on convincing existing Cypress customers to use GSI chips as direct replacements for Cypress chips – even going so far as to provide its sales personnel with charts that identify Cypress part numbers and their corresponding GSI drop-in replacement. *See* Exhibit A (GSI "Cheat Sheet"), at CYP201300007854-7857. Sales by GSI are thus a potential lost sale for Cypress, not only today but potentially well into the future. Any delay of this litigation harms Cypress.

At the same time, the posture of this case is far different from a typical IPR stay request because GSI is only requesting that part of the case be stayed. Regardless of the outcome of GSI's stay motion, this Court is scheduled to conduct a claim construction hearing on October 28th on the '861 Patent and the parties will continue to engage in detailed, highly technical discovery on all of the Accused Products over the next six to nine months. Staying additional Cypress patents therefore would not result in the potential efficiencies that drove the decisions on which GSI relies.

In the interest of compromise, Cypress agreed in May to bifurcate the claim construction process to allow the IPR records to be further developed before GSI's motion to stay was decided. With the benefit of this additional time, it is now possible to make better decisions with regard to the most likely outcomes of the respective IPRs. The '861 IPR was not instituted – the Patent Office accepted Cypress's arguments over GSI's. Similarly, the record to date shows a strong likelihood that the Patent Office will agree with Cypress on the '403 and '839 IPRs.[1] In its motion, GSI fails to even mention Cypress's recent response in the '403/'839 IPR or the testimony of its own expert that severely undermines its IPR case – choosing instead to rely on statistics. As evidenced by the PTAB's recent denial of institution of the '861 patent, statistics simply do not trump clear technical deficiencies in the prior art.

---

[1] Notably, Cypress did not make a technical argument against institution of the '403/'839 IPRs, due in part to highly redundant nature of GSI's IPR Petitions. Instead, Cypress requested that the redundant grounds be denied – a request that was largely granted by the PTAB. Cypress subsequently had an opportunity to, and did, present the substantive reasons why GSI's petitions on these patents are not well-taken.

Accordingly, Cypress proposes that the case be stayed with respect to the '128/'645 Patents, but proceed on the '403/'839 Patents.[2] As described below, in view of the currently scheduled *Markman* hearing on the '861 Patent and the overlapping scope of discovery between the '403/'839 Patents and the now *three* non-IPR patents, this is the most efficient course of action for both the parties and the Court and is consistent and supported by the balancing test used to determine whether a stay is appropriate.

## II. LEGAL STANDARDS

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-37 (Fed. Cir. 1988) (internal citations omitted). "While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the Court must decide stay requests on a case-by-case basis." *TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.*, No. 13-cv-02218, 2013 WL 6021324, at *1 (N.D. Cal. Nov. 13, 2013) (Tigar, J.) (citing *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. 06-cv-04206, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007)). "However, a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Tokuyama Corp. v. Vision Dynamics, LLC*, No. 08-cv-02781, 2008 WL 4452118, at *2 (N.D. Cal. Oct. 3, 2008) (internal citations omitted). "[T]here is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule would 'invite parties to unilaterally derail' litigation." *Asetek Holding, Inc. et al. v. Cooler Master Co., Ltd., et al.*, No. 13-cv-00457, 2014 WL 1350813, at *2 (N.D. Cal. Apr. 3, 2014) (Tigar, J.) (quoting *Tokuyama*, 2008 WL 4452118, at *2).

Courts consider three factors in determining whether to stay a case pending reexamination: (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage

---

[2] While Cypress is confident of an ultimate victory in the '128/'645 IPRs, Cypress concedes that these IPRs have just been instituted and will be decided significantly later in time such that parallel litigation on those patents may not be a good use of the Court's or the parties' resources. As such, and in the interests of compromise, Cypress does not oppose a stay on the '128/'645 patents.

to the non-moving party. *See TPK Touch Solutions*, 2013 WL 6021324, at *2. As to the third factor, the Court has previously relied on four sub-factors for evaluating prejudice: "'(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties.'" *Asetek*, 2014 WL 1350813, at *4 (quoting *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012)). "Courts recognize that, when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise." *Id.* at *5 (citations omitted).

The Federal Circuit's recent holding in *VirtualAgility Inv. v. Salesforce.com*, cited by GSI, has little bearing on the legal standard for GSI's motion to stay because it concerned a stay under the America Invents Act's (AIA) covered business method (CBM) program. *See VirtualAgility Inv. v. Salesforce.com,* --F.3d --, 2014 WL 3360806, at *1 (Fed. Cir. Jul. 10, 2014). Here, the patents-in-suit are not business method patents and are not subject to the same regime applied in *VirtualAgility*. The CBM statute provides for interlocutory appeal (*see* § 18(b)(2)) and explicitly sets forth a four factor test for determining if a stay is appropriate (*see* § 18(b)(1)(A)-(D)). No such provisions apply here. Further, the defendant in *VirtualAgility* asserted that the patents-in-suit were invalid in part based on 35 U.S.C. § 101, which is not asserted here and cannot be asserted in an IPR.[3]

### III. ARGUMENT

#### A. The Stage and History of Litigation Weigh Against Issuing The Requested Stay

The stage of this litigation weighs against staying the '403/'839 Patents. "An earlier stage of litigation weighs in favor of a stay pending reexamination." *Asetek Holding, Inc. et al. v. Cooler Master Co., Ltd., et al.*, No. 13-cv-00457, 2014 WL 1350813, at *4 (N.D. Cal. Apr. 3, 2014) (Tigar, J.) (finding the stage of litigation factor weighed against a stay "at this late stage of the proceedings" because "claim construction is complete, fact discovery is nearly complete, and only expert discovery, dispositive motions, and trial remain.").

---

[3] *See* 35 U.S.C. §311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.").

3    CYPRESS'S RESPONSE TO GSI'S RENEWED
MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case Nos. 3:13-cv-02013-JST & 3:13-cv-03757-JST

1    While GSI is correct that discovery in this case has not yet proceeded to depositions on the
2    Accused '403/'839 Products, it will proceed there over the next seven months (the period in which
3    the stay would be in effect) because GSI is only able to seek a ***partial*** stay.  Given the overlap in the
4    Accused Products between the '403/'839 Patents and three non-IPR patents (*see* Exhibit B (Cypress's
5    Infringement Contentions), at 5), it is proper for this Court to evaluate the stage of this case both now
6    and in April when the requested stay would expire.

7    Moreover, although depositions have not yet begun on the Accused Products, the parties have
8    conducted considerable written discovery including production of tens of thousands of pages of
9    documents, initial source code review, and contentions.  Claim construction briefing is complete on
10   all patents, and the terms for two patents have been construed by the Court.  A *Markman* hearing is
11   set for October 28th for at least the '861 Patent.  Further, between now and April, the parties will
12   continue (and possibly complete) written discovery, will conduct numerous individual and corporate
13   depositions, and will likely begin expert discovery.  As described below, given the overlap in the
14   technologies, Cypress expects that the same witnesses that will provide testimony for the '403/'839
15   patents will be deposed on the non-IPR patents during the time of the requested stay.  For example,
16   the '134 patent and the '403/'839 patents share an inventor and, like the '134 Patent, the claims of
17   the '403/'839 Patents involve aspects of addressing in GSI's products, which will be the subject of
18   deposition even if a stay is entered.

19   Both the current state and expected state of the case in April 2015 further distinguishes this
20   case from *VirtualAgility,* upon which GSI heavily relies.  For example, the court in *VirtualAgility*
21   found that the timing of the case weighed in favor of a stay, in part, because the parties had not yet
22   filed their joint claim construction statement.  *See VirtualAgility*, 2014 WL 3360806, at *7.  Here, the
23   parties filed their joint claim construction statement in January 2014.  The court in *VirtualAgility* also
24   relied on the fact that the case was in its infancy when the defendants filed their motion.  *Id.* at *8
25   ("At the time Defendants filed their motion in May 2013, the case was less than four months old.
26   Discovery had not yet begun and no trial date had been set.").  This case was filed a year before GSI's
27   original motion to stay.  It is not in its infancy now and certainly will not be in April 2015.  Moreover,
28

4    CYPRESS'S RESPONSE TO GSI'S RENEWED
     MOTION TO STAY PENDING *INTER PARTES* REVIEW
     Case Nos. 3:13-cv-02013-JST & 3:13-cv-03757-JST

and perhaps most importantly, the defendants in *VirtualAgility* were not requesting a **partial** stay; under the *VirtualAgility* scenario, a case against the Accused Products would not have continued if the stay motion were granted.

For each of these reasons, this factor weighs against issuing a stay.

**B.     The Requested Stay Would Not Simplify the Issues and Trial of the Case**

As described below, for the relatively modest benefit of a seven month delay on the '403/'839 Patents alone, a partial stay would cause tremendous duplication, extra costs, and additional complexity in the likely event that the '403/'839 Patents are confirmed by the PTAB. At the same time, given the complete overlap in Accused Products and the currently scheduled *Markman* hearing, there would be relatively little additional cost or complexity in proceeding on the '403/'839 Patents.

**1.     The Evidence Shows that the '403/'839 Patents are Likely to be Confirmed**

GSI's entire argument that the PTAB is likely to invalidate the '403/'839 Patents is based on statistics rather than the actual substance of the issues in the '403/'839 IPRs. However, as the non-institution of the '861 Patent shows, statistics do not dictate outcomes.[4] Similarly, even if one were to accept the statistics as predictive, small sample sizes, such as the number of final decisions issued so far by the PTAB, are notoriously unreliable statistically.

However, as the briefing on the '403/'839 IPRs is almost complete, this Court does not need to rely on statistics. It can look at the record, which shows that the '403/'839 Patents will likely be confirmed. First, as noted above, it is important to recognize that Cypress did not oppose institution of the IPRs on the '403/'839 Patents. It simply asked the PTAB to reduce the number of redundant grounds to enable a more efficient proceeding. Because institution of the '403/'839 Patents was not opposed by Cypress, the PTAB has not yet weighed the strengths of Cypress's arguments nor had the opportunity to evaluate the expert testimony, which (as described below) strongly shows the patents are valid.

The PTAB instituted IPR on the '403/'839 Patents based on two references – the Sharp patent and the Takayenagi reference. The Board instituted against some claims based on an assertion of

---

[4] According to the latest statistics available, in FY14, 76% of IPRs were instituted. Exhibit C ("AIA Progress" from http://www.uspto.gov/ip/boards/bpai/stats/082814_aia_stat_graph.pdf), at 4.

anticipation and against others based on an assertion of obviousness.[5] Thereafter, in a submission that (as noted above) GSI neglects to mention to the Court, Cypress provided its substantive arguments as to why the prior art does not anticipate the patents or render them obvious. For the Court's reference, a complete copy of Cypress's IPR response for the '403 Patent is provided in Exhibit D. As this exhibit shows, there are numerous flaws in GSI's assertions of both anticipation and obviousness. For the purposes of this opposition, however, Cypress focuses the Court on GSI's assertion of anticipation based on the Sharp patent. Anticipation based on Sharp is the ***only ground*** on which IPR was instituted for Asserted Claims 2-6 and 16 of the '403 Patent and Asserted Claims 2-4, 13, and 18 of the '839 Patent. *See* Dkt 118-2 and 118-3. As such, if this argument of anticipation fails, these Asserted Claims will be confirmed and the claims would need to be litigated before the Court.

As the Court is aware, for a claim to be anticipated, a single prior art reference must "show all of the limitations of the claims arranged or combined in the same way as recited in the claims." *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1342 (Fed. Cir. 2010); *see also Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999) (holding that "[t]he mere possibility that [a figure in the prior art reference] might be understood by one of skill in the art to disclose [a claimed limitation] is insufficient to show that it is inherently disclosed."). As such, for GSI to succeed in its IPR on the '403/'839 Patents, it must prove that the Sharp patent – as it is written and without changes – discloses the claimed subject matter of the '403/'839 Patents.

As described on at least pages 4-9 of Exhibit D, GSI's IPR anticipation arguments based on the Sharp patent will fail because GSI's own expert admitted that the Sharp patent would need to be "adjusted" to disclose the claimed features. In particular, GSI's assertions of anticipation rely on using the circuitry from one part of the Sharp reference (Figure 3) as the implementation of the address latch 12 shown in another part of the reference (Figure 1). *See* Dkt. 118-2 at 16. GSI's expert first testified in deposition that respective timing diagrams for these two figures (Figures 2 and 4) could be lined up to show the operation of the system. *See* Exhibit E (Deposition of Robert Murphy), 43:15-

---

[5] The '839 IPR response is substantively very similar.

6     CYPRESS'S RESPONSE TO GSI'S RENEWED
MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case Nos. 3:13-cv-02013-JST & 3:13-cv-03757-JST

24; *see also* Exhibit D, at 5-6. However, as shown below, if Figures 2 and 4 from the Sharp patent are aligned (as Mr. Murphy originally testified), the transitions recited in the claims would happen *in-between* addresses:



As there are no valid addresses at the recited transitions (where claimed address storage is purportedly taking place), there cannot be anticipation, as each of the '403 claims requires storing addresses "in response to" a periodic signal transition.

As GSI's expert's deposition continued, he realized this flaw in the attempted application of the Sharp patent discussed above. Exhibit E, at 62:21-63:1 ("I can't just connect this tick mark to this one and say that's where they go because the – ***the input latch won't work if I simply do that***"). However, rather than concede that the assertion of anticipation was incorrect, GSI's expert then testified that "***I'm trying to figure out how to adjust the timing here*** so the latches have the right setup and hold time to work correctly," and he proceeded – in real time, during his deposition – to devise a way in which he claimed the Sharp reference could be "adjusted" to store addresses. *See*

Exhibit E, at 63:2-4 (emphasis added). Eventually, GSI's expert provided the following depiction, which is Exhibit F:



Notably, GSI's IPR petition (upon which the IPR is based) made no mention of this flaw in the Sharp patent nor of the need to adjust the circuit timings to make the system work as GSI proposes. While GSI is certainly entitled to make a ***new argument*** to the PTAB that a reference that its own expert now concedes must be ***adjusted*** would nonetheless anticipate, this Court should not accept that it is likely that the PTAB will endorse this argument. As described above, if GSI's adjustment argument is not accepted, at least claims 2-6 and 16 will be confirmed and will return to this Court.

2. **Stay Pending Likely Affirmance Would Create Significant Inefficiencies**

"Where reexamination will address ***all of the claims*** at issue in the litigation, there is ***some probability*** that the reexamination will simplify the issues in question, and the trial of the case." *Asetek,* 2014 WL 1350813, at *3 (citing *AT&T Intellectual Prop. I v. Tivo, Inc.,* 774 F. Supp. 2d 1049,

8     CYPRESS'S RESPONSE TO GSI'S RENEWED
MOTION TO STAY PENDING *INTER PARTES* REVIEW
Case Nos. 3:13-cv-02013-JST & 3:13-cv-03757-JST

1053 (N.D. Cal. 2011)) (emphasis added). "Courts have also observed that where only some of the patents-in-suit are subject to reexamination and the litigation presents issues not before the PTO, a stay is less appropriate." *Id.* (citing *Xilinx, Inc. v. Invention Inv. Fund I LP,* No. 11-cv-00671, 2012 WL 6003311, at *4 (N.D. Cal. Nov. 30, 2012)) ("[N]otable is the fact that four of the patents-in-suit are not currently undergoing reexamination; the court will have to resolve all claims in dispute as to those patents. That being the case, waiting for the outcome of reexamination does nothing for that portion of the litigation.").

If only the '403, '839, '128, and '645 Patents (collectively, "the IPR Patents") were at issue in this case, staying the '403/'839 Patents (in addition to the '128/'645 Patents) might simplify the issues and trial in this case. In this case, however, discovery on the Accused Products will be conducted over the next seven months **on every Accused '403/'839 Product** and involve the same party witnesses as would be involved with the '403/'839 Patents, as all of the patents-in-suit relate to the same general area of technology, quad data rate ("QDR") static random access memory ("SRAM"). *See* Exhibit B, at 3-5.

In particular, Cathal G. Phelan is an inventor of the non-IPR '134 Patent and also of the '403/'839 Patents. If the stay is granted, Mr. Phelan would likely need to be deposed twice – once on the '134 Patent and again on the '403/'839 Patents after the stay is lifted. Similarly, Mr. Joseph Zhou, an inventor on the non-IPR '477 Patent, is expected to testify on Cypress's practice of the '403/'839 Patents. Mr. Zhou would similarly likely need to be deposed twice if the stay is granted. This witness overlap appears to apply equally to GSI, as GSI listed the exact same technical, financial, and marketing witnesses in its F.R.C.P. 26(a)(1) disclosures for the '839/'403 Patents as it listed for the non-IPR '861 Patent, including GSI CEO Lee-Lean Shu who is described as having information "relating to the design, research, and development, functions and operation, testing, demonstration, sales, marketing, and customers of the accused GSI products" for both IPR and non-IPR patents. *See* Exhibit G at 2-4.

On the other hand, if the Court grants GSI's motion to stay and the PTAB wholly invalidates the IPR Patents, relatively little time and effort would have been saved because similar aspects of the

same Accused Products would be explored in discovery for the non-IPR patents. However, if the Court grants GSI's motion to stay and the PTAB leaves one or more patent claims intact, Cypress would then need to separately move forward with discovery on those claims, resulting in a significant duplication in efforts by both the parties and the Court.

Moreover, the Court is already scheduled to conduct a *Markman* hearing on October 28th on the '861 Patent for which IPR was denied. Given this, staying the '403/'839 Patents will actually make an already complex case even more complex as the Court would then need to schedule a ***third*** *Markman* hearing to address the single disputed term in the '403/'839 Patents. It is not efficient for the parties or Court to potentially hold a *Markman* hearing on one term, which is already fully briefed, and could easily be addressed at the *Markman* hearing that will occur on October 28.

**C.   A Stay Would Unduly Prejudice Cypress**

On balance, the *Ever Win* factors utilized by the Court to assess prejudice show that a stay would unduly prejudice and present a clear disadvantage to Cypress.

**1.   Cypress's and GSI's Direct Competition Strongly Weighs Against Issuing a Stay**

It is an undisputed fact that Cypress and GSI are direct competitors in the SRAM market. *See* Dkt. No. 92 at 14 (GSI conceding that "GSI and Cypress are competitors"). In fact, the competition between the parties is so substantial that GSI is pursuing an antitrust complaint against Cypress in this district. *See* Case No. 5:11-cv-03163-EJD.[6] "'Courts are generally reluctant to stay proceedings where the parties are direct competitors.'" *Verinata Health, Inc. et al. v. Ariosa Diagnostics, Inc. et al.*, No. 12-cv-05501, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (quoting *Boston Sci. Corp. v. Cordis Corp.*, 777 F.Supp.2d 783, 789 (D. Del. 2011)) (denying defendant's motion to stay litigation pending IPR). A non-moving party that is a direct competitor of a moving party is especially prejudiced because it cannot be fairly compensated by later assigned damages. *See Tric Tools, Inc. v. TT Techs., Inc.*, No 12-cv-03490, 2012 WL 5289409, at *2 (N.D. Cal. Oct. 25, 2012) *on reconsideration*, 2012 WL 6087483 (N.D. Cal. Dec. 6, 2012) ("Other considerations include whether

---

[6] As is being made clear in the antitrust case, GSI's allegations lack any merit.

the parties are direct competitors such that delay might result in harm to the non-moving party in the marketplace that is not readily compensable by a damages award.") (citing *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F. Supp. 2d 348, 351 (D. Mass. 2011)) (denying defendant's motion to stay litigation pending ex parte reexamination). "Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages. Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." *Avago Techs. Fiber IP (Singapore) PTE LTD. v. IPtronics, Inc.*, No. 10-cv-02863, 2011 WL 3267768, at *5 (N.D. Cal. Jul. 28, 2011) (internal citations omitted) (denying defendant's motion to stay litigation pending ex parte reexamination).

A stay in this litigation would prejudice Cypress as a direct competitor. While the case is partially stayed, GSI would be able to continue to use Cypress's patented inventions to take sales away from Cypress. As noted above, GSI's business model appears to be based on specifically targeting Cypress customers with less expensive GSI drop-in replacements. *See* Exhibit A (GSI sales document showing a cross-reference between Cypress part numbers and GSI part numbers to enable GSI sales personnel to sell to existing Cypress customers), at 3. As Cypress expects to show at trial, not only is Cypress losing profits to GSI in this way, but GSI's lower-priced products have driven down prices in the market for those sales Cypress does make. Any delay in reaching trial prejudices Cypress further by allowing this trend to continue. This sub-factor heavily weighs against issuing a stay.

The cases GSI cites for the proposition that stays have been granted in competitor cases in this district are clearly distinguishable from this case. In *Sonics,* the court granted the defendant's motion to stay because the plaintiff failed to prove that more than money would be lost during the stay. *See Sonics, Inc. v. Arteris, Inc.*, No. 11-cv-05311, 2013 WL 503091, at *4 (N.D. Cal. Feb. 8 2013) (Armstrong, J.) ("Indeed, Plaintiff will be fully compensated for delays if it prevails at trial following reexamination.") (citing *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. 06-cv-02252, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007) (Armstrong, J.) and *Ho Keung Tse v. Apple, Inc.*,

No. 06-cv-06573, 2007 WL 2904279, at *4 (N.D. Cal. Oct. 4, 2007) (Armstrong, J.)). Here, Cypress has put forth evidence that the fierce competition between it and GSI would likely lead to loss of market share in the SRAM market if this litigation is stayed. Similarly, in the *Nanometrics* case cited by GSI, the plaintiff only demonstrated monetary damages. *See Nanometrics*, 2007 WL 627920, at *3 ("Nanometrics's potential recovery of damages will not be affected by the re-examination proceeding. Nanometrics will be able to recover for any infringement that occurs prior to 2010.") (internal citation omitted).

In *Network Appliance II*, the plaintiff put forth no evidence that it would lose sales to the defendant during a stay. *See Network Appliance, Inc. v. Sun Microsystems, Inc.*, No. 07-cv-06053, 2010 WL 545855, at *5 (N.D. Cal. Feb. 11, 2010) ("However, [defendant] persuasively counters that [plaintiff] has not put forward any evidence of lost sales as a result of [defendant's] new ZFS products…."). GSI fails to mention this distinguishing fact. As evidenced by Exhibit A, GSI markets its infringing products as direct replacements for Cypress's products. There is no doubt that GSI will continue to poach Cypress's current and potential customers during a stay. The final case GSI relies on, *Procter & Gamble,* wholly misses the mark as it does not even address the competition between the parties. *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, No. 08-cv-00930, 2008 WL 3833576, at *2 (N.D. Cal. Aug. 15, 2008).

In the face of its admission that Cypress and GSI are direct competitors in the SRAM marketplace, GSI's assertions of lack of prejudice are unavailing. First, this consolidated case is the first district court patent case to move forward between the parties. To the extent that there were previous "cases," one was an ITC investigation and the other was a stayed district court case that became part of the current case. Cypress's decision to assert certain patents before the ITC and different patents in the district court does not evidence any lack of prejudice from GSI's infringement of the district court patents.

Similarly, Cypress's decision to not file a preliminary injunction motion does not show a lack of prejudice. As the Court is well aware, this case involves highly technical subject matter and requires considerable technical documentation, including product schematics – all of which GSI

refused to even produce until after Cypress provided infringement contentions. Cypress also expected that there would be claim construction disputes and that GSI would assert that the '403 and '839 Patents were invalid. These factors taken together indicated that, despite GSI's infringement, this case was not an appropriate one in which to request a preliminary injunction. Cypress's decision to not occupy the Court's time with a preliminary injunction motion that would likely be denied due at least to lack of discovery does not indicate a lack of prejudice. *See Mytee Products, Inc. v. Harris Research, Inc.,* 439 Fed. Appx. 882, 888 (Fed. Cir. 2011) ("[W]e have never held that failure to seek a preliminary injunction must be considered as a factor in weighing against a court's issuance of a permanent injunction."). Cypress has asked for a permanent injunction as relief in the consolidated Complaint and believes that the facts will warrant such an injunction after the trial. Additional delays in reaching that point continue to prejudice Cypress.

### 2. GSI Waited Over Six Months to File Its IPRs

"Because of the delay that may accrue by virtue of the PTO instituting an IPR trial on a patent-in-suit, this Court expects accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them." *Asetek*, 2014 WL 1350813, at *5 (denying defendant's motion to stay). GSI did not promptly file its IPRs. Cypress filed its complaint on May 1, 2013. GSI filed the '403 IPR petition on November 4, 2013, the '839 IPR petition on November 27, 2014, and the '128/'645 IPR petitions on February 11, 2014. GSI provides no explanation for its six-plus month delay other than to argue that it could not have filed its IPRs until after Cypress provided its infringement contentions. In particular, GSI asserts that before it was served with infringement contentions, Cypress had "asserted seven patents against GSI, consisting of 187 claims." Notwithstanding the fact that Cypress was never asserting 187 claims, the number 187 is unavailing, as 145 of these claims were from patents other than the '403/'839 patents. While GSI might have believed that it made tactical sense to wait to file its IPRs until after Cypress's infringement contentions, that was a deliberate decision. There is no requirement from the PTO to wait, and, in jurisdictions that do not require early infringement contentions, a defendant must seek IPR without them. Accordingly, this sub-factor also weighs against issuing a stay.

### 3. GSI Timely Moved for a Stay After Filing

After delaying the filing of the IPRs for the IPR patents, GSI moved for a stay of the litigation promptly after institution of the IPRs. Prompt filing of its motion to stay does not, however, cure the harm caused by its unreasonable delay in filing its IPRs.

### 4. The PTAB Instituted the IPRs

The Patent Trial and Appeal Board ("PTAB") instituted the '403/'839 Patent IPRs on April 16, 2014 and instituted the '128/'645 Patent IPRs on August 11, 2014. Currently, oral hearings for the '403/'839 Patent IPRs proceedings are scheduled for January 12, 2015, and a final decision is expected by April 16, 2015. However, because the '403/'839 IPRs were filed three months before the IPRs for '128, '645, and '861 Patents (for which GSI's renewed motion was waiting), the Court now benefits from a post-institution record that is typically absent in the usual case where a stay is requested immediately after institution. Further, GSI's claim that the *inter partes* review is "likely to result in all of the asserted claims being found invalid," especially as to the '839/'403 Patents, is misplaced for the reasons noted above.

## IV. CONCLUSION

For the foregoing reasons, Cypress respectfully requests the Court deny GSI's motion to stay as to the '839 and '403 Patents. Cypress does not oppose partially staying this litigation as to the '128 and '645 Patents.

Dated: September 4, 2014

Respectfully Submitted,

FISH & RICHARDSON, P.C.

By: */s/ David M. Hoffman*
Frank E. Scherkenbach
Thomas L. Halkowski
David M. Hoffman
Erin C. Jones

Attorneys for Plaintiff
CYPRESS SEMICONDUCTOR CORP.