MARK FOWLER (Bar No. 124235)
*mark.fowler@dlapiper.com*
GERALD T. SEKIMURA (Bar No. 096165)
*gerald.sekimura@dlapiper.com*
ANDREW P. VALENTINE (Bar No. 162094)
*andrew.valentine@dlapiper.com*
ALAN LIMBACH (Bar No. 173059)
*alan.limbach@dlapiper.com*
TIMOTHY LOHSE (Bar No. 177230)
*timothy.lohse@dlapiper.com*
MICHAEL G. SCHWARTZ (Bar No. 197010)
*michael.schwartz@dlapiper.com*
BRENT YAMASHITA (Bar No. 206890)
*brent.yamashita@dlapiper.com*
ERIK FUEHRER (Bar No. 252578)
*erik.fuehrer@dlapiper.com*
SAORI KAJI (Bar No. 260392)
*saori.kaji@dlapiper.com*
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2214
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for Defendant
GSI TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CYPRESS SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GSI TECHNOLOGY, INC.,<br><br>Defendant.. | **CASE NOS. 3:13-CV-02013-JST**<br>**3:13-CV-03757-JST**<br><br>DEFENDANT GSI TECHNOLOGY, INC.'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW<br><br>DATE: October 2, 2014<br>TIME: 2:00 P.M.<br>PLACE: Courtroom 9, 19th floor<br>JUDGE: Hon. Jon S. Tigar |

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539    CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | A STAY SHOULD BE GRANTED WITH RESPECT TO ALL FOUR IPR PATENTS | 1 |
|  | A. The Relevant Case Law Favors Granting A Stay. | 1 |
|  | B. The Procedural Posture Of The Case Favors A Stay. | 1 |
|  | C. Granting A Stay Will Simplify The Issues For Trial. | 5 |
|  |    1. Cypress's IPR Arguments Are Without Merit. | 5 |
|  |       a. Cypress Improperly Attempts To Argue The Merits Of The '403 And '839 IPRs. | 5 |
|  |       b. There Will Be Efficiencies Gained Even If Certain Claims Are Confirmed (Which They Will Not Be). | 6 |
|  |       c. The '403 And '839 IPRs Are Far From Complete. | 6 |
|  |       d. The Evidence Shows That All Claims Of The '403 And '839 Patents Will Be Cancelled. | 7 |
|  |    2. A Stay Will Create Efficiencies. | 10 |
|  | D. Cypress Will Not Suffer Undue Prejudice. | 11 |
|  |    1. The Importance Of GSI And Cypress Being Competitors Is Belied By Cypress's Agreement To Stay The Case With Respect To The '128 And '645 Patents. | 11 |
|  |    2. GSI Timely Filed The IPRs. | 13 |
|  |    3. GSI Timely Moved For A Stay. | 15 |
|  |    4. The PTAB Instituted The IPRs. | 15 |
| III. | CONCLUSION | 15 |

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-i-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Advanced Analogic Tech, Inc. v. Kinetic Tech., Inc.*,
 2009 WL 4981164 (N.D. Cal. Dec. 15, 2009) ........................................................................ 2

*Affinity Labs of TX LLC v. Samsung Elec. Co., Ltd.*,
 2014 WL 3845684 (N.D. Cal. Aug. 1, 2014) .......................................................................... 2

*Asetek Holdings, Inc. v. Cooler Master Co., Ltd.*,
 2014 WL 1350813 ........................................................................................................... 11, 14

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
 2013 WL 6133763 (M.D. Fla. Nov. 21, 2013) ...................................................................... 12

*Avago Techs. Fiber IP (Singapore) PTE Ltd. v. IPtronics, Inc.*,
 2011 WL 3267768 (N.D. Cal. July 28, 2011) ................................................................. 12, 13

*Black and Decker Inc. v. Positec USA, Inc.*,
 2013 WL 5718460 (N.D. Ill. Oct. 1, 2013) ........................................................................... 12

*Destination Maternity Corp. v. Target Corp.*,
 2014 WL 1202941 (E.D. Pa. Mar. 24, 2014) ........................................................................ 12

*Evolutionary Intelligence, LLC v. Millenial Media, Inc.*,
 2014 WL 2738501 (N.D. Cal. June 11, 2014) ...................................................................... 14

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
 2014 WL 819277 (N.D. Cal. Feb. 28, 2014) ......................................................................... 14

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) ......................................................................... 12

*Network Appliance, Inc. v. Sun Microsystems, Inc.*,
 2010 WL 545855 (N.D. Cal. Feb. 11, 2010) ..................................................................... 2, 12

*PersonalWeb Tech. v. Facebook*,
 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ........................................................................... 2

*Richteck Tech. Corp. v. UPI Semiconductor Corp.*,
 No. 09-cv-05659-WHA, 2011 WL 445509 (N.D. Cal Feb. 3, 2011) .................................... 11

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
 2014 WL 3107447 (N.D. Cal. July 3, 2014) ................................................................... 12, 13

*Sonics, Inc. v. Arteris, Inc.*,
 2013 WL 503091 (N.D. Cal. Feb. 8, 2013) ........................................................................... 12

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-ii-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

*Speedtrack, Inc. v. Wal-Mart.com USA, LLC,*
 2009 WL 281932 (N.D. Cal. Feb. 5, 2009) ........................................................................ 2

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,*
 1995 WL 20470 (N.D. Cal. Jan. 13 1995) .......................................................................... 2

*Tric Tools, Inc. v. TT Techs., Inc.,*
 2012 WL 5289409 (N.D. Cal. Oct. 25, 2012) .................................................................. 13

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
 2014 WL 121640 (N.D. Cal. 2014) .................................................................................. 13

*VirtualAgility Inc. v. SalesForce.com,*
 —F.3d—, 2014 WL 3360806 (Fed. Cir. July 10, 2014) ......................................... 1, 4, 6

**STATUTES**

35 U.S.C. §§ 311-319 .................................................................................................................. 6

35 U.S.C. §§ 321-329 .................................................................................................................. 6

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-iii-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

## I. INTRODUCTION

Cypress concedes that the Court should grant a stay with respect to the '128 and '645 patents. Thus, the stay should be granted with respect to those patents. However, Cypress fails to establish in its Opposition why a stay should not be granted with respect to the '403 and '839 patents as well. In this regard, Cypress's concession that the case should be stayed with respect to the '128 and '645 patents undermines Cypress's entire opposition to stay the case with respect to the '403 and '839 patents. As explained below, staying only two of the four patents will add, not reduce, the burden to non-parties (including two named inventors on all four IPR patents), the parties, and the Court. As established in the Renewed Motion and below, the stay factors overwhelmingly tilt in favor of granting a stay of all four IPR patents. Accordingly, GSI respectfully requests that its Renewed Motion be granted.

## II. A STAY SHOULD BE GRANTED WITH RESPECT TO ALL FOUR IPR PATENTS

### A. The Relevant Case Law Favors Granting A Stay.

Cypress unconvincingly attempts to distinguish *VirtualAgility Inc. v. SalesForce.com,* — F.3d.—, 2014 WL 3360806 (Fed. Cir. July 10, 2014). As noted in GSI's Renewed Motion at page 9 and footnote 3, and as Cypress ignores in its Opposition, *VirtualAgility* is highly instructive because (a) the stay elements proscribed in the AIA for the Court to consider are consistent with the body of common law applied by the federal courts in granting stays in the *inter partes* review and *inter partes* reexamination contexts, and (b) the Federal Circuit in *VirtualAgility* cites to and relies upon numerous pre-AIA stay cases to support its analysis and conclusions under the statutory CBM factors. Thus, in the absence of any other relevant Federal Circuit case interpreting stays of litigation following the AIA (Cypress cites none, and GSI is unaware of any), the Federal Circuit's analysis of the facts and law under each of the relevant stay factors in *VirtualAgility* is, if not explicitly controlling, highly instructive of the Federal Circuit's view as to how those factors should be applied in the IPR context.

### B. The Procedural Posture Of The Case Favors A Stay.

Cypress does not dispute, as it cannot, that (1) no discovery cut-off has been set,

DLA Piper LLP (US)
East Palo Alto

-1-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

(2) written discovery is ongoing, (3) no depositions have been held, (4) no expert reports have been exchanged, (5) no expert discovery has been conducted, (6) no dispositive motions have been filed or heard, (7) claim construction is not yet complete as the Court has yet to hear and issue an opinion on six disputed claim terms across five patents, and (8) no trial date has been set. Renewed Motion at 9:22-11:17. Similarly, Cypress fails to even address the following cases that make clear that at the stage of this case, and in light of those foregoing facts, the granting of a stay is warranted and appropriate: *Affinity Labs of TX LLC v. Samsung Elec. Co., Ltd.,* 2014 WL 3845684, at *2 (N.D. Cal. Aug. 1, 2014); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,* 1995 WL 20470, at *2 (N.D. Cal. Jan. 13 1995); *Advanced Analogic Tech, Inc. v. Kinetic Tech., Inc.,* 2009 WL 4981164, at *2 (N.D. Cal. Dec. 15, 2009); *Speedtrack, Inc. v. Wal-Mart.com USA, LLC,* 2009 WL 281932 (N.D. Cal. Feb. 5, 2009); *PersonalWeb Tech. v. Facebook,* 2014 WL 116340, at *3-4 (N.D. Cal. Jan. 13, 2014); and *Network Appliance, Inc. v. Sun Microsystems, Inc.,* 2010 WL 545855, at *3 (N.D. Cal. Feb. 11, 2010).

The crux of Cypress's Opposition is its argument that GSI is only seeking a partial stay. Opposition at 4:1-5:4. But Cypress's argument is belied by its own willingness to agree to a partial stay of the case with respect to the '128 and '645 patents. While Cypress tries to establish false premises to justify its request that only two of the IPR patents be stayed, it is clear from simply reviewing the face of the patents that staying the four IPR patents (as proposed by GSI) will be more judicially efficient than staying only two of the IPR patents (as proposed by Cypress). For example, Cypress argues that "given the overlap in the technologies, Cypress expects that the same witnesses that will provide testimony for the '403/'839 patents will be deposed on the non-IPR patents during the time of the requested stay." *Id.* at 4:13-18, 9:10-14. In this regard, Cypress notes that the '134 patent and the '403/'839 patents share a common inventor, Cathal Phelan. *Id.* at 4:15-18, 9:15-19. However, what Cypress fails to note is that Mr. Phelan is <u>also a named inventor</u> on the '128 and '645 patents. Consolidated Amended Complaint for Patent Infringement (the "Complaint"), Exs. C ('128 patent), D ('645 patent), Dkt. Nos. 96, 96-3, 96-4. Thus, Mr. Phelan (Cypress's former executive vice president and Chief Technology Officer) may be required to sit for two depositions whether the Court stays the four IPR patents

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-2-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

(as proposed by GSI) or the two IPR patents (as proposed by Cypress).  Moreover, under Cypress's proposal, Mr. Phelan would be deposed initially on three patents whereas he will be deposed on only one patent under GSI's proposal (and may never be further deposed if the IPRs are successful).  Thus, GSI's proposal is much more judicially efficient as it relates to Mr. Phelan.

Further, Cypress also fails to mention that the IPR patents share two other named inventors – Ashish Pancholy and Simon Lovett – neither of whom is a current Cypress employee and neither of whom is a named inventor on the '134, '477 and '861 patents.  *Id.* Complaint Exs. A-G.  Cypress's proposal to stay the case with respect to just the '645 and '128 patents guarantees that Messrs. Pancholy and Lovett will be deposed once (with respect to the '403 and '839 patents) and possibly a second time with respect to the '645 and '128 patents.  On the other hand, under GSI's proposal, these non-party witnesses would only need to be deposed once at most and (as with Mr. Phelan) the need to take these deposition would be obviated if the IPRs are successful. Again, GSI's proposal is more judicially efficient.

Cypress also argues that its employee, Mr. Tzou, may have to be deposed twice both because he is an inventor on the '477 patent and because he is expected to testify on Cypress's alleged practice of the '403/'839 patents (which Cypress argues without a supporting declaration). Opposition at 7:17-19 (misspelled as "Zhou").  But, Mr. Tzou is not a named inventor on the '403/'839 patents.  If the IPRs are successful, Mr. Tzou will not need to be deposed twice.  If it is too difficult for Mr. Tzou to testify twice (*i.e.*, if the '403/'839 patents survive IPR), Cypress can decide whether to offer him a second time or present a different witness.

Cypress also argues that claims of the '403/'839 patents involve "aspects of addressing in GSI products, which will be the subject of deposition even if a stay is entered."  Opposition at 4:15-18.  But, as Cypress notes later in its brief, the same GSI witnesses will be deposed on various technical aspects of its products, regardless of which patents are at issue. *Id.* at 9:20-25. Thus, those GSI witnesses will have to be deposed at least twice given Cypress's agreement to stay the case with respect to the '128 and '645 patents.  And, while certain GSI witnesses may also have to be deposed twice, that is certainly a risk GSI is willing to take in exchange for the significant savings in costs and fees that would result from all or substantially all of the claims

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-3-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

being cancelled in the IPRs.

Cypress also argues that because there is only one disputed claim term in the '403 and '839 patents, there purportedly will be little efficiency gained by staying the case with respect to those patents. Opposition at 4:10-11, 10:5-10. It is quite presumptuous for Cypress to assume that the Court will not enjoy any meaningful benefit from not having to construe the disputed claim term of the '403/'839 patents. In this regard, there are three disputed claim terms in the '128 and '645 patents, including the term "periodic signal" (for the '128 patent only). *See* Defendant GSI Technology, Inc.'s Responsive Claim Construction Brief, Dkt. 74, at 13:22-16:1. The sole disputed claim term of the '403 and '839 patents is "periodic signal [transition]." *Id.* at 16:9-17:22. So, while the two patent families are different, the issues raised in the parties' claim construction briefing substantially overlap for the construction of these terms in these patents. Because of that overlapping issue, the Court may have to study the '128 and '645 patent claim construction issues now, or revisit the '403 and '839 claim construction issues if those patents survive IPR. Either choice creates more work for the Court, all of which may be eliminated if the IPR patent claims are cancelled. Thus, once again, Cypress's argument is belied by its agreement to stay the case with respect to the '128 and '645 patents.

Cypress also argues that "it is proper for this Court to evaluate the stage of this case both now and in April when the requested stay would expire." Opposition at 4:5-6. Notably, Cypress does not cite any legal authority to support that novel proposition. Moreover, it is incorrect. As the Federal Circuit noted, "[a]s for the proper time to measure the stage of litigation, district courts have adopted the date of the filing of the motion to stay." *VirtualAgility*, 2014 WL 3360806, at * 7 (citing pre- and post-AIA cases for this proposition, including non-CBM cases). With respect to measuring the case "now," the "now" must be measured as of April 24, 2014, the date GSI filed its original motion. As noted in the Renewed Motion (at 4:11-28, 15:3-9), Cypress cannot argue prejudice caused by the delay between the Court's denial without prejudice of the Motion and the filing of this Renewed Motion, especially because the original Motion pertained solely to the '403 and '839 patents. With respect to the potential stage of the case in April 2015, no case schedule has been set. And, not even Cypress has asserted that this case will be ready for

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-4-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

trial in or even shortly after April 2015.[1] Thus, if the PTAB decides in GSI's favor on any or all asserted claims in this case, the parties and the Court will save significant time and effort in not litigating these patents. And if any of the claims survive the IPRs, the Court will have the benefit of the prosecution history created by the IPRs, admissions by the parties, and the estoppel effect pertaining to certain prior art.

### C. Granting A Stay Will Simplify The Issues For Trial.

#### 1. Cypress's IPR Arguments Are Without Merit.

While Cypress attempts to dispute the reliability of IPR-related statistics coming out of the PTAB, Cypress does not dispute that (a) the overwhelming majority of instituted IPRs result in some or all claims being cancelled and (b) the legal standard and burden of proof for cancelling claims in IPRs will increase the number of post-grant proceedings in which one or more claims will be cancelled. *See* Renewed Motion at 11:18-12:10. Rather, Cypress contends that the stay should be denied because Cypress will win the '403 and '839 IPRs in the PTAB by attempting to argue the merits of the IPRs. Cypress's arguments are without merit for at least four reasons.

##### a. Cypress Improperly Attempts To Argue The Merits Of The '403 And '839 IPRs.

It would be an error of law for the Court to engage in an analysis of the merits of the pending IPRs to determine whether to grant a stay. In this regard, with respect to pre-determining what the PTAB might do, the Federal Circuit stated:

> The district court erred as a matter of law to the extent that it decided to "review" the PTAB's determination that claims of the '413 patent are more likely than not invalid in the posture of a ruling on a motion to stay. Under the statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings.
>
> Indeed, a challenge to the PTAB's "more likely than not" determination at this stage amounts to an improper collateral attack on the PTAB's decision to institute CBM review….

---

[1] It is worth noting that based on the current schedule in the antitrust case, the jury trial in the antitrust case (which will involve many of the same witnesses and the same party principals) is currently set to start on February 23, 2015, and to conclude between March 31 and April 2, 2015. *See* Pretrial Order, *GSI Technology, Inc. v. Cypress Semiconductor Corporation,* Case No. 5:11-cv-03613 EJD, Dkt. No. 75 (N.D. Cal. June 3, 2014).

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-5-

CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

*VirtualAgility*, 2014 WL 3360806, at *5. There is no material difference between the CBM provisions of the AIA and the IPR provisions of the AIA with respect to the Court's role (or lack thereof) in reviewing the PTAB's determinations regarding the patentability of claims that are subject to IPRs. *Compare* 35 U.S.C. §§ 311-319 *to* §§ 321-329, AIA § 18. Notably, Cypress cites no legal authority for the purported proposition that the Court should, much less is permitted to, engage in this analysis on a stay motion. Cypress's proposed approach would in effect turn every motion for a stay pending an IPR into either (a) a summary judgment motion, (b) a preliminary injunction motion or (c) an advisory opinion from the district court to the PTAB.

### b. There Will Be Efficiencies Gained Even If Certain Claims Are Confirmed (Which They Will Not Be).

Cypress's entire argument is based on a subset of the claims of the '403 patent asserted against Cypress and also at issue in the '403 IPR (less than 50%), namely claims 2-6 and 16 of the '403 patent. *See* Opposition at 8:21-22. Cypress provides no substantive argument why it would prevail on any other claims of the '403 patent, namely 1, 7, 12, 13, 15, 17, 19 and 20. *See* Schwartz Decl., ¶ 2, Ex. A, at 22. Each of those claims has also been asserted against GSI. Renewed Motion at 5:2-17. Thus, even assuming, *arguendo*, Cypress's arguments have merit (which they do not as explained below) with respect to the '403 patent, it would still be more efficient to stay the case pending the IPRs with respect to the other eight asserted claims of the '403 patent (two of which are independent claims). Further, Cypress does not provide any argument whatsoever as to why it may prevail on the '839 patent IPR.[2]

### c. The '403 And '839 IPRs Are Far From Complete.

Cypress incorrectly argues that the briefing in the '403 and '839 IPRs is almost complete. As Cypress admits, GSI's reply to Cypress's responsive brief in the IPR is not due until November 17, 2014. Moreover, the oral argument hearing in the '403 and '839 IPRs is scheduled for January 12, 2015. Thus, contrary to Cypress's contention, the briefing and argument is far

---

[2] Presumably, Cypress does not believe it is likely to prevail with respect to claims 1, 7, 12, 13, 15, 17, 19 and 20 of the '403 patent or any of the claims at issue relating to the '839 patent, further substantiating why the case as to these patents should be stayed to allow the PTAB proceedings to run their course.

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-6-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

from complete, and GSI has not had the opportunity to respond to Cypress's arguments in the IPRs. This is important because, as Cypress also admits, GSI is entitled during the IPR to make a new argument in its IPR reply. Opposition at 8:17-23. It is therefore premature and misleading for Cypress to assert in its Opposition that the '403 and '839 patents will likely be confirmed based upon the incomplete record to date.

### d. The Evidence Shows That All Claims Of The '403 And '839 Patents Will Be Cancelled.

Although the Federal Circuit has found that it would be error to engage in a pre-determination of the merits, Cypress's argument is substantively wrong. As established below, Cypress's argument is based upon Cypress attributing positions to GSI's expert, Robert Murphy, that Mr. Murphy did not take or adopt. Rather, during his IPR deposition, Mr. Murphy responded to Cypress's theory, which Cypress's counsel pushed upon him, but Mr. Murphy never adopted Cypress's position. Specifically, Mr. Murphy did not testify that the Sharp patent would need to be "adjusted" to disclose the claimed features. Accordingly, Cypress's argument is both substantively incorrect and based upon a misrepresentation of the record.

Cypress's argument mischaracterizes Mr. Murphy's testimony and the evidence adduced during his deposition. In this regard, at page 7 of the Opposition, Cypress includes a graphic that purports to line up Figures 2 and 4 of Sharp (the "Figure 2/4 Graphic"). Cypress also includes a snippet of Mr. Murphy's deposition testimony with arrows pointing from that testimony to the Figure 2/4 Graphic. However, the Figure 2/4 Graphic was <u>not a deposition exhibit</u> used during Mr. Murphy's deposition. Indeed, Cypress created that graphic for purposes of its Opposition. Thus, the deposition testimony that Cypress incompletely quotes and associates with a graphic that was never even shown to Mr. Murphy is taken completely out of context and mischaracterizes Mr. Murphy's true testimony.

Moreover, Cypress excerpts an incomplete portion of Mr. Murphy's testimony as part of the Figure 2/4 Graphic (43:19-24), omitting the last three important sentences of Mr. Murphy's answer. *Id.* at 7:12-15. Specifically, Mr. Murphy completed his answer, testifying that:

> "[a]nd you can see that it says "gate in data n into latch 1." [¶]
> And then at the transition 58, we see – at the bottom language, we

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-7-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

> see "gate in data n+1 into latch 2." [¶] So the – addresses would be
> presented to the address latch at half the frequency of the signal phi.

Hoffman Decl. Ex. E ("Murphy Dep.") at 43:23-44:5.

That omitted testimony shows that one of skill in the art would know that in order to gate the data into the latch, the latch has a "setup and hold time[]." *Id.* at 66:23-67:1. Cypress omits any depiction of that important distinction in the Figure 2/4 Graphic.

In an effort to attempt to get Mr. Murphy to adopt Cypress's flawed "straight line" theory of the Figure 2/4 Graphic, Cypress introduced Murphy Exhibit 4, which is another document Cypress's counsel created by photocopying Figures 2 and 4 of Sharp onto the same page of paper (not as they appeared in the original Sharp reference) and then asking Mr. Murphy to annotate the exhibit by drawing certain lines connecting Figures 2 and 4. Murphy Exhibit 4 is set forth at page 8 of the Opposition and immediately below:



*See* Hoffman Decl., Ex. F. While testifying about and annotating Exhibit 4, Mr. Murphy made it clear that it was not possible to draw Cypress's straight lines and "line up" Figures 2 and 4

because Figures 2 and 4 serve very different purposes: Figure 2 is a conceptual view of the memory disclosed in Sharp and Figure 4 depicts the actual operation of a latch. Murphy Dep. at 61:13-63:4, 67:12-18. Mr. Murphy testified that Figure 2

> is a *conceptual view* of the memory device, how it works; right? And – and it's letting you know that the relative positions of the address, the write data, for instance, the hit/miss, the latch WL 1, and the write cycle, their relative positions to each other.
>
> Below, Figure 4 is the *actual operation* of the latch 12. And the – the clock time – the phi here is the external clock, and then CK and CK bar are the periodic signals that are used internally for the device….

*Id.* at 61:14-62:10 (emphasis added), 67:5-18 ("I did it consistently for each cycle, to account for the fact that the upper level figure, Figure 2, is a generic timing diagram for a part, and the bottom is a very specific timing diagram for the circuit in Figure 3."). As Figures 2 and 4 were never intended to be lined up in the fashion Cypress now asserts, Mr. Murphy explained why they could not be lined up in the fashion argued by Cypress. *Id.* at 62:11-63:4 (explaining how the different "tick marks" are used for different purposes in the two figures and why they cannot simply be connected). Cypress continued to press the issue, but Mr. Murphy testified consistently about what the Sharp figures actually depict and why they cannot be lined up to fit Cypress's incorrect argument, including correcting on the record Cypress counsel's attempt to mischaracterize Mr. Murphy's testimony. *Id.* at 63:20-65:2 ("A. No, that's not exactly what I said.").

Mr. Murphy provided detailed testimony concerning annotated deposition Exhibit 4. *Id.* 65:5-67:18. Importantly, Mr. Murphy explained why Cypress's desire to line up Figures 2 and 4 with straight, vertical lines would not work and, thus, why he drew the lines on Exhibit 4 in the fashion that he did. For example, Mr. Murphy testified as follows:

> Q. So if I understand what you're saying correctly, if the memory cycle tick marks align with a cycle of the external clock, the input latches in Figure 3 won't work?
>
> A. It's not because of where the memory cycle is defined. It's because of the – according to Figure 2, at that – where the tick mark is, it says the addresses are not stable; right? And if I simply line that up with the clock edge here, then I will be shoving an unstable address into a latch, which I know won't work.

*Id.* at 63:5-15. Thus, Mr. Murphy testified that "even one of ordinary skill in the art would

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-9-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

understand that latches have setup and hold times, and that a hold time would be required here for the address." *Id.* at 66:23-67:1.

In short, in response to numerous questions posed by Cypress's counsel attempting to get Mr. Murphy to adopt Cypress's incorrect view of Sharp, Mr. Murphy testified consistently with GSI's, Mr. Murphy's and the PTAB's correct position that Sharp does in fact show valid addresses at the recited transitions as depicted in Sharp Figure 4. *See* Schwartz Decl. ¶ 2, Ex. A at 14-15. Specifically, Mr. Murphy testified, as one of skill in the art, that: (1) Figures 2 and 4 are different and distinguishable, and that they cannot simply be lined up with hand-drawn vertical lines as Cypress asked him to do in deposition; (2) a person of skill in the art understands that the latch has set up and hold times and would understand that Figure 2 is only a conceptual drawing; (3) Figure 4 shows how the latch in Figure 3 operates and anticipates the claims of the '403 and '839 patents, and (4) no adjustment of Sharp is needed to make that showing. Therefore, Mr. Murphy's testimony is consistent with the PTAB's conclusion in the Decision to Institute that "Petitioner has demonstrated a reasonable likelihood that claims 1-6, 16, 19 and 20 are anticipated by Sharp." Schwartz Decl., ¶ 2, Ex. A at 13-15. As such, even if the Court looks to the merits, Cypress's argument that certain claims of the '403 and '839 patents are likely to be confirmed by the PTAB is incorrect.

### 2. A Stay Will Create Efficiencies.

As established in the Renewed Motion, every asserted claim of the IPR patents is subject to review in the IPRs. *See* Renewed Motion at 11:18-13:4. Whether some or all of those claims are cancelled as a result of the IPRs, the issues in the case will be narrowed for the Court, the jury and the parties. Either the patents will be eliminated entirely or the number of claims will be limited, and GSI will be estopped from asserting certain prior art in the district court case. Moreover, the prosecution history and analysis created by the PTAB and the parties during the IPRs may aid the Court in determining claim construction and other issues in the district court case. Those efficiencies are the very starting point of determining whether to grant a stay.

Nevertheless, Cypress incorrectly argues that granting the stay will cause inefficiencies in the case, repeating the same arguments it offers in connection with its procedural-posture prong

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-10-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

1 arguments. Cypress's arguments are wrong for the reasons established in section II.B, above.

2 Cypress also relies upon this Court's *Asetek* decision in purported support of its argument. Cypress's reliance on this case is unavailing. First, while Cypress accurately quotes a portion of the Court's statement of the law in its Opposition (at 8:25-9:7), Cypress fails to quote the Court's ultimate conclusion, namely that "[n]evertheless, ordinarily, '[i]f any of the asserted claims are canceled, the ordeals of claim construction and trial will become unnecessary for those claims.'" *Asetek Holdings, Inc. v. Cooler Master Co., Ltd.*, 2014 WL 1350813, at *2 (quoting *Richteck Tech. Corp. v. UPI Semiconductor Corp.*, No. 09-cv-05659-WHA, 2011 WL 445509, at *3 (N.D. Cal Feb. 3, 2011)). Second, *Asetek* is distinguishable from this case. As pertains to this factor, in *Asetek*, there already was a trial date and a fact discovery cutoff, and the Court issued its order denying the requested stay less than two months before the close of fact discovery. *Id.* at *1, 3 (opinion signed April 3, 2014, discovery cutoff of May 30, 2014, trial date of December 1, 2014).

### D. Cypress Will Not Suffer Undue Prejudice.

As stated in the Renewed Motion, there are four prejudice factors to consider, and each of them favors a stay.

#### 1. The Importance Of GSI And Cypress Being Competitors Is Belied By Cypress's Agreement To Stay The Case With Respect To The '128 And '645 Patents.

Cypress's argument that it will be prejudiced by a stay because GSI and Cypress are competitors is unavailing for at least four reasons.

First, Cypress's argument is belied by the fact that it has agreed to stay the case with respect to the '128 and '645 patents. Cypress fails to explain how it will be prejudiced by a stay of the '403 and '839 patents but not the '128 and '645 patents. Moreover, as established in GSI's Renewed Motion, Cypress will have its day in court with respect to the '134, '477 and '861 patents regardless of whether the Court stays the case with respect to all four IPR patents.

Second, Cypress fails to submit any evidence of any alleged prejudice that it will incur that cannot be compensated by monetary damages should Cypress ultimately prevail at trial (which it will not). For example, Cypress offers unsubstantiated attorney argument that "GSI's business model <u>appears to be</u> based on specifically targeting Cypress customers with less

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-11-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

expensive GSI drop-in replacements." Opposition at 11:13-14 (emphasis added). Cypress's only purported support for this attorney argument is a one-off GSI sales document that Cypress itself produced in the litigation. Yet, Cypress fails to explain how such sales price information, if it is even relevant, cannot be captured in a damages model and recovered at trial. Cypress also makes the unsupported attorney argument that it expects to show at trial that Cypress is losing profits to GSI and that market prices are allegedly being driven down. Importantly, however, Cypress fails to submit any documentary evidence or a declaration from either a Cypress employee or from its damages expert (whom Cypress disclosed on June 11, 2014) in support of either (a) its purported damages argument, (b) its hypothetical theory that it may be losing sales to GSI, or (c) its purported lost sales, reduced sales prices, or reduced market prices.

Third, Cypress's attempt to distinguish the cases cited by GSI, including specifically, the cases in which courts have granted stays in cases between competitors, is unavailing. Cypress makes no effort to distinguish *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, 2014 WL 3107447, at 5-6 (N.D. Cal. July 3, 2014); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, 2013 WL 6133763, at 3 (M.D. Fla. Nov. 21, 2013); *Destination Maternity Corp. v. Target Corp.*, 2014 WL 1202941, at *4-5 (E.D. Pa. Mar. 24, 2014); and *Black and Decker Inc. v. Positec USA, Inc.*, 2013 WL 5718460, at *2-3 (N.D. Ill. Oct. 1, 2013). Cypress's only effort to distinguish the *Sonics, Inc. v. Arteris, Inc.,* 2013 WL 503091, at *4 (N.D. Cal. Feb. 8, 2013), *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.,* 2007 WL 627920 (N.D. Cal. Feb. 26, 2007), and *Network Appliance, Inc. v. Sun Microsystems, Inc.,* 2010 WL 545855, at *3 (N.D. Cal. Feb. 11, 2010) cases is to argue that the plaintiffs in those cases did not prove that more than money would be lost during the stay or that plaintiff would lose sales during the stay. As established immediately above, Cypress failed to make those same showings. Thus, those cases support GSI's motion.

Finally, the cases cited by Cypress are themselves distinguishable from this case. *Avago Techs. Fiber IP (Singapore) PTE Ltd. v. IPtronics, Inc.*, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) is distinguishable on any number of grounds. First, the plaintiff in *Avago* submitted a declaration from its product marketing manager that, according to the Court, contained "more pressing marketplace harms" than the plaintiff's other "unsupported assertions of harm to

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-12-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

| | |
|---|---|
| 1 | reputation and goodwill." *Id.* at *5. Here, on the other hand, Cypress's arguments are based on |
| 2 | attorney argument, unsupported by any evidence from its client or its expert, of alleged |
| 3 | marketplace harm. Second, unlike here, *Avago* involved *ex parte* reexaminations for which no |
| 4 | estoppel attached should the plaintiff prevail in the reexams. *Id.* The *Robert Bosch* case cited by |
| 5 | GSI in its Renewed Motion, is more closely on point with this case. Tellingly, as noted above, |
| 6 | Cypress makes no attempt to distinguish the *Robert Bosch* case in its Opposition. |
| 7 | *Tric Tools, Inc. v. TT Techs., Inc.*, 2012 WL 5289409 (N.D. Cal. Oct. 25, 2012) is |
| 8 | distinguishable, too. First, *Tric Tools* involved *ex parte* reexamination requests. Second, while |
| 9 | the Court's discussion of the competitor issue is cursory, it suggests that the delay in that case |
| 10 | "could result in significant harm to Tric in terms of **developing a market** for its products." *Id.* at |
| 11 | *3 (emphasis added). Here, even Cypress does not assert that there is any risk to it of not |
| 12 | developing a market for its products if the Court were to grant the stay. Rather, Cypress argues – |
| 13 | without any support or further elaboration – that GSI's lower-priced products have somehow |
| 14 | driven down prices in the market. |
| 15 | *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 2014 WL 121640 (N.D. Cal. 2014) is |
| 16 | distinguishable as well. In *Verinata,* the Court had already issued its claim construction order and |
| 17 | had already set a trial date. As established above, the opposite is true in this case. And, with |
| 18 | respect to the competitor issue, the court found that the "field of non-invasive prenatal testing has |
| 19 | rapidly developed into a multi-billion dollar industry." *Id.* at *3. Here, on the other hand, |
| 20 | Cypress does not argue that the SRAM industry is "rapidly developing," there is no evidence of |
| 21 | such a rapid development and, as Cypress notes in the Complaint, it has been involved in the |
| 22 | SRAM field for over thirty years. Complaint, ¶ 7. Thus, this factor favors a stay. |
| 23 | **2.  GSI Timely Filed The IPRs.** |
| 24 | Cypress argues that GSI did not timely file its petitions for IPRs. In so doing, Cypress |
| 25 | ignores every case cited by GSI in its Renewed Motion. These cases make clear that waiting to |
| 26 | file IPR petitions until after the plaintiff serves infringement contentions is not evidence of delay. |
| 27 | Renewed Motion at 14:16-24. They also make clear that courts routinely grant stays pending |
| 28 | IPRs even when the defendant files the petition for IPR on the last statutorily permitted date to do |

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-13-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

so (*i.e.*, one year after the plaintiff filed the complaint). *Id.* at 14:24-28. Indeed, the cases GSI cited in its opening papers make it clear that delay is not unreasonable when defendants exercise their statutory rights to file within in the one-year time frame. *See, e.g, Evolutionary Intelligence, LLC v. Sprint Nextel Corp.,* 2014 WL 819277, at *4 (N.D. Cal. Feb. 28, 2014) ("Evolutionary Intelligence argues that a stay would unduly prejudice it because the IPR petitioners delayed until the very last day. However, the IPR petitioners filed the petitions properly within the statutory time frame. Under these facts, this delay was not unreasonable [and] … [t]his argument thus does not support a finding of undue prejudice."); *Evolutionary Intelligence, LLC v. Millenial Media, Inc.,* 2014 WL 2738501, at *5 (N.D. Cal. June 11, 2014) ("IPR petitioners are permitted one year after receiving a patent infringement complaint to file an IPR petition with the PTO. Many courts have recognized that undue prejudice does not automatically flow from a party's choosing to exercise its statutory rights.").

Here, as established in the Renewed Motion, GSI timely filed its petitions for IPR after Cypress served its amended infringement contentions and well within the one-year deadline to do so. Renewed Motion at 13-15. Nevertheless, Cypress faults GSI for waiting to learn exactly which claims Cypress intended to assert against GSI before filing petitions for IPR. Cypress's argument ignores, of course, that GSI filed petitions for IPR that were limited to the asserted claims, rendering the IPR process more efficient for the PTAB and the parties. Cypress also ignores the fact that, until Cypress identified which claims it was asserting, GSI was left to search for, identify and analyze relevant prior art for all claims across five of the patents (*i.e.*, the '861 patent and the IPR patents) – not just the '403 and '839 patents in a vacuum.

Cypress quotes the Court's prior *Asetek* decision for the proposition that this Court expects accused infringers to evaluate and file IPR petitions as soon as possible. Opposition at 13:13-16. However, as Cypress did with respect to the "efficiencies" prong as noted above, Cypress fails to cite the important following language of the Court's *Asetek* opinion: "Provided an accused infringer is diligent, delay due to preparing an IPR petition, ascertaining the plaintiff's theories of infringement, or otherwise researching the patents that have been asserted in an action does not unduly prejudice the patent owner." *Asetek*, 2014 WL 1350813, at * 5. As established

DLA Piper LLP (US)
East Palo Alto

WEST\250343539

-14-

CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED
MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW

in the Renewed Motion and above, these are precisely the reasons for the timing of GSI's filing of the IPRs. Thus, filing of the petitions for IPR was timely and this factor weighs in favor of a stay.

### 3. GSI Timely Moved For A Stay.

Cypress does not contest that GSI timely moved for a stay after the PTAB instituted the IPRs of any of the IPR Patents. Thus, this factor weighs in favor of a stay.

### 4. The PTAB Instituted The IPRs.

Cypress argues that because there is a post-institution record that is absent in the usual case where a stay is requested immediately after institution, that somehow changes the analysis. Cypress's argument is unavailing for at least three reasons. First, as established in section II.C.1.c, above, the post-institution record is incomplete. GSI has not had to file its response, the PTAB has not held the oral argument, and the PTAB has not issued its final decision. Second, Cypress is in effect arguing that it should benefit from the intervening time period that lapsed between GSI filing the Motion and the Renewed Motion, notwithstanding that it agreed, and the Court included that agreement in its Order, not to argue any prejudice based upon that passage of time. Finally, Cypress's arguments against GSI being likely to prevail are incorrect for the reasons established in section II.C.1.d, above. Thus, this factor favors a stay.

## III. CONCLUSION

For the foregoing reasons and the reasons set forth in GSI's opening papers, the Court should grant a stay of the case with respect to all four IPR patents.

Dated: September 11, 2014  DLA PIPER LLP (US)

By: */s/ Michael G. Schwartz*
  MARK FOWLER
  GERALD T. SEKIMURA
  ANDREW P. VALENTINE
  TIMOTHY LOHSE
  MICHAEL G. SCHWARTZ
  BRENT YAMASHITA
  ERIK FUEHRER
  SAORI KAJI

  Attorneys for Defendant
  GSI TECHNOLOGY, INC.

DLA PIPER LLP (US)
EAST PALO ALTO

WEST\250343539

-15-
CASE NOS. 13-CV-02013-JST & 13-CV-03757-JST; GSI'S REPLY ISO ITS RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW