1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   CYPRESS SEMICONDUCTOR
    CORPORATION,                                   Case No.  13-cv-02013-JST

8                     Plaintiff,

9          v.                                      **ORDER CONSTRUING CLAIMS OF
                                                   U.S. PATENT NUMBER 6,967,861**
10  GSI TECHNOLOGY, INC.,
                                                   Re: ECF Nos. 68, 74, 80
11                    Defendant.

12

13         On October 28, 2014, the Court held a hearing for the purpose of construing two disputed

14  terms in the claims of United States Patent No. 6,967,861 (the "'861 Patent").  ECF No. 129; see

15  also ECF Nos. 68, 74, 80 (claim construction briefs).  After consideration of the arguments and

16  evidence presented by the parties, as well as the relevant portions of the record, the Court

17  construes the terms as set forth below.

    **I.     BACKGROUND**

18

19         Plaintiff Cypress Semiconductor Corporation brings this action against Defendant GSI

20  Technology, Inc., alleging that GSI infringed its patents relating to static random access memory

21  ("SRAM") for computers, networking, and other electronic systems.  ECF No. 1.  The patents

22  describe semiconductor "chip" technology that increases memory speed.  Id.  Cypress alleges that

23  GSI directly infringes Cypress' patents, by manufacturing and selling GSI's SigmaQuad product

24  line, among other Cypress products.  Id. ¶ 21.

25         In addition to the '861 Patent, there are six other patents at issue in this case:  U.S. Patent

26  Nos. 6,069,839 ("'839 Patent"); 6,292,403 ("'403 Patent"); 6,385,128 ("'128 Patent"); 6,445,645

27  ("'645 Patent"); 6,651,134 ("'134 Patent"); and 7,142,477 ("'477 Patent").  On April 22, 2014, the

28  parties identified ten terms construction of which is "likely to be most significant to resolving the

United States District Court
Northern District of California

parties' dispute," pursuant to Patent Local Rule 4-1(b).  ECF No. 88.  On July 29, 2014, the Court construed seven terms of two of the patents-in-suit, the '134 and '477 Patents.  ECF No. 114.  On October 7, 2014, the Court granted GSI's motion to stay the action with respect to the '128, '645, '403, and '839 Patents.  In this Order, the Court construes the two disputed terms from the one remaining patent, the '861 Patent.  Both of the disputed terms appear in claims 1, 3, 9, 11, 18, 20, 26, and 28 of the '861 Patent.

## II.       JURISDICTION

Because this is a civil action arising under an Act of Congress relating to patents, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338.

## III.      LEGAL STANDARD

The construction of patent claim terms is a matter of law for the court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).  A "bedrock principle" of patent law is that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotation omitted).  The "objective baseline" for construing patent terms is to identify the "ordinary and customary meaning" of the term, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification" and the prosecution history.  Id.  In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words."  Id. at 1314.

When construing the claims of a patent, the Court looks first "to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  After that, a patent's intrinsic record is the "primary basis for construing [a] claim" and "is the best source for understanding a technical term."  Phillips, 415 F.3d at 1314.  The intrinsic record includes the

United States District Court
Northern District of California

1   patent and its file history, including any reexaminations and reissues, related patents and their

2   prosecution histories, and the prior art that is cited or incorporated by reference in the patent-in-

3   suit and prosecution history.  Id.  Other than the claims themselves, the written specification that

4   accompanies the claims generally "is the single best guide to the meaning of a disputed term."  Id.

5   at 1312, 1315 (citation omitted).

6          Courts may also rely on extrinsic evidence to construe claim terms, although they must

7   give it less weight.  Id. at 1317.  Extrinsic evidence includes all evidence that is not part of the

8   patent's intrinsic record, such as inventor testimony, expert testimony, documentary evidence as to

9   how the patentee and alleged infringer have used claim terms, dictionaries, learned treatises, and

10  other similar sources.  Id. at 1318 (citing Markman, 52 F.3d at 980, aff'd, 517 U.S. 370 (1996).

11  Where there is a conflict between intrinsic and extrinsic evidence, the latter is to be disregarded.

12  "[E]xtrinsic evidence may be used only to assist in the proper understanding of the disputed

13  limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it

14  is defined, even by implication, in the specification or file history."  Tempo Lighting, Inc. v.

15  Tivoli, LLC, 742 F.3d 973, 977-978 (Fed. Cir. 2014) (quoting Bell Atl. Network Servs. v. Covad

16  Commc'ns Grp., 262 F.3d 1258, 1269 (Fed. Cir. 2001).

**IV.    ANALYSIS**

18         Claim 1 of the '861 Patent recites:

19                                    Claim 1

20         A method for implementing a self-timed, read to write operation in a
            memory storage device, the method comprising:
21

22         capturing a read address during a first half of a current clock cycle;

23         commencing a read operation so as to read data corresponding to
            said captured read address onto a pair of bit lines;
24

25         commencing a write operation for said current clock cycle so as to
            cause write data to appear on said pair of bit lines **as soon as said**
26         **read data** from said captured read address **is amplified by a sense**
            **amplifier**, wherein said write operation uses a previous write
27         address captured during a preceding clock cycle; and

28

3

capturing a current write address during a second half of said current clock cycle, said current write address to be used for a write operation implemented during a subsequent clock cycle;

wherein said commencing a write operation for said current clock cycle is timed independent of said current write address captured during said second half of said current clock cycle.

The use of the disputed terms in claim 1 is representative of the use in the other claims of the '861 Patent asserted here.

**A.    "As soon as"/ "as soon as said read data . . . is amplified"**

| Disputed Claim Term | Cypress's Proposal | GSI's Proposal |
|---|---|---|
| "as soon as" / "as soon as read data . . . is amplified" | Plain meaning, which is "shortly after the amplification of the read data" | "as soon as" means "immediately, without delay"<br><br>"as soon as said read data . . . is amplified" means "immediately, without delay, as said read data . . . is detected" |

Cypress proposes a "plain meaning," relatively broad construction of the disputed terms, and argues that GSI's proposed construction improperly imports the limitation into the claims of occurring "without delay" or, in other words, "instantaneously." ECF No. 68 at 11-13. Cypress points to the embodiment in figure 4 of the specification to demonstrate that there is a delay between the amplification of read data and the appearance of write data. ECF Nos. 68 at 12, 80 at 10. GSI's proposed construction is narrower, requiring that write data appear "immediately, without delay" after the read data is amplified. ECF No. 74 at 18. GSI contends that this is the "plain meaning" construction of the term, and that it is also true to the "teaching of the specification" and "consistent with the extrinsic evidence." Id. The Court finds that neither proposed construction, in its entirety, is appropriate here.

1    First, the Court finds that Cypress' proposed construction is not "plain meaning."  A

2  person of ordinary skill in the art of SRAM technology would understand that "as soon as"

3  conveys not only that a second event occurs after the first one, but that the second event occurs as

4  quickly after the first event as the circumstances permit.  See ECF No. 74-3 (Decl. of R. Jacob

5  Baker) at ¶ 30; Phillips, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language

6  as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

7  construction in such cases involves little more than the application of the widely accepted meaning

8  of commonly understood words.").  Cypress' use of "shortly after" potentially indicates an

9  indefinite (though short) delay after the first event, which does not carry this same meaning of "as

10  soon as."  Moreover, looking to the specification of the '861 Patent, the essence of the disclosed

11  invention is speed.  Indeed, the specification itself repeatedly uses "as soon as" synonymously

12  with "immediately after."  See, e.g., '861 Patent, cols. 2:55-62, 3:22-26, 4:57-67.  Thus, whatever

13  "shortly after" means, it is not consistent with the specification's emphasis on speed – the critical

14  aspect of the '861 Patent – and therefore is not a proper construction of "as soon as."  See

15  generally Phillips, 415 F.3d at 1314 (holding that claim terms are given the meaning with which

16  they are used in the specification); Osram GmbH v. Int'l Trade Comm'n, 505 F.3d 1351, 1358

17  (Fed. Cir. 2007) (holding that a construction was erroneous where it was "at odds with the

18  purposes of the invention.").

19    As to GSI's proposal, to include "without delay" in the construction would impermissibly

20  adopt a limitation that is not present in the claims.  Phillips, 415 F.3d at 1312.  Further, Cypress is

21  correct that there is some inherent delay between amplification of the read data and the appearance

22  of write data, as shown in figure 4 of the specification.  Though this delay is minimal, it is not

23  entirely absent, and the Court will not construe the disputed term to be inconsistent with the

24  specification.  See Fujitsu Ltd. v. Netgear, Inc., 620 F.3d 1321, 1335 (Fed. Cir. 2010).  Thus, the

25  Court finds that the "without delay" portion of GSI's proposed construction is inconsistent with

26  the patent and its specification and should not be included in the Court's construction of the term.

27    The Court adopts a modified version of GSI's proposed construction, and construes "as

28  soon as" to mean "immediately after."  Accordingly, the Court finds that "as soon as" / "as soon as

United States District Court
Northern District of California

5

read data . . . is amplified" means "immediately after" / "immediately after read data . . . is amplified."

### "Amplified by a sense amplifier"

| Disputed Claim Term | Cypress's Proposal | GSI's Proposal |
|---|---|---|
| "amplified by a sense amplifier" | Plain meaning, which is "detected and captured by a sense amplifier" | "detected by a sense amplifier" |

Cypress contends that this term does not require construction but that if the Court decides to construe the term, it should conclude that "amplified" means "detected and captured" by a sense amplifier. ECF No. 68 at 14. GSI contends that "detected and captured" is redundant because "captured" is subsumed within "detected" and that Cypress is attempting to apply an overly broad construction to the disputed term. ECF No. 74 at 24.

Because the parties agree that "detected" should be included in the construction, the Court focuses on the disputed portion of the proposed constructions—i.e., "and captured." Looking to the claims and specification, "captured" is used as a synonym for "detected" and refers to the sensing, by the sense amplifier, of the low-voltage data signal that transmits read or write memory information. See, e.g., '861 Patent, col. 3:44; claim 1, col. 5:37-55. Thus, the use of "capture" in this context is redundant and would only confuse the jury's understanding of the '861 Patent. The Court rejects Cypress' proposal that "amplified by a sense amplifier" means "detected *and captured* by a sense amplifier."

Thus, the Court adopts GSI's proposed construction: "detected by a sense amplifier."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

**V.      CONCLUSION**

For the foregoing reasons, the Court construes the disputed claim terms as follows:

| Term | Construction |
|------|--------------|
| "as soon as" / "as soon as read data . . . is amplified" | "immediately after" / "immediately after read data . . . is amplified" |
| "amplified by a sense amplifier" | "detected by a sense amplifier" |

**IT IS SO ORDERED.**

Dated:  November 25, 2014



                                        JON S. TIGAR
                                  United States District Judge